UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SAMUEL E. GERALD,

                        Plaintiff,                      Civil Action No. 17 Civ. 06525
                                                 (KAM) (RLM)

      -against-


D.C.V HOLDINGS, INC., DOMINICK VITUCCI
TRUCK SALES d/b/a DOM'S TRUCK SALES,
DOMINICK VITUCCI, SR., and DOMINICK
VITUCCI, JR.,

                       Defendants.
----------------------------------------------------------------X


MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'

MOTION FOR SUMMARY JUDGMENT

By: Megan S. Goddard, Esq.
**GODDARD LAW PLLC**
Attorneys for Plaintiff
39 Broadway, Suite 1540
New York, NY 10006
T: (646) 504-863
Email: megan@goddardlawnyc.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ i

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................1

APPLICABLE LEGAL STANDARD FOR A SUMMARY JUDGMENT MOTION ......2

POINT I
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SHOULD BE DENIED .......................................................................3

A.  All Claims Against DCV Holdings Must Stand ................................................3

B.  Defendants Have the Requisite Fifteen Employees
    for Liability Under Title VII……………………………………….……..6

C.  Plaintiff's Claims are Not Time-Barred……………….…………………7

D.  Plaintiff Has Established a Prima Facie Case of
    Race Discrimination under Title VII and the NYSHRL .................................9

    a.  Applicable Law……………………………………….…...………9

        i.   Title VII and NYSHRL…………………….……………9

    b.  Plaintiff Has Established His *Prima Facie* Case of Race Discrimination
        under Title VII and the NYSHRL……………………………...…....10

        i.   Plaintiff Was Subjected to Multiple Adverse Actions……………10

    c.  These Adverse Actions Occurred Under Circumstances Giving Rise
        to an Inference of Discrimination………………………………………16

E.  Plaintiff Has Established His More Lenient Burden Under the NYCHRL…...18

F.  Plaintiff Has Established a Prima Facie Case of a Hostile Work
    Environment Under Title VII and the NYSHRL…………………….…20

    a.  Defendants' Conduct Created a Subjectively Abusive Working
        Environment and Altered the Conditions of Plaintiff's Employment……..20

G. A Reasonable Juror Could Conclude that Plaintiff Was Subject to a Hostile Work Environment Under NYCHRL…………………………………22

H. Plaintiff Has Established a *Prima Facie* Case of Retaliation Under Title VII, Section 1981, and the NYSHRL……………………………………...…...……23

    a. Plaintiff Engaged in Protected Activity…………………………...………..23

    b. Plaintiff Suffered Adverse Actions for Engaging in Protected Activity...…24

        i. Plaintiff Suffered the Adverse Actions of a Retaliatory Hostile Work Environment, Forced Unpaid Leave, and Termination Has a Result of Engaging in Protected Activity…..……25

    c. Plaintiff Has Established a Causal Connection Between the Protected Activity and the Adverse Actions………………………………26

I. A Reasonable Juror Could Conclude that Plaintiff Suffered Retaliation Under the NYCHRL………………………………………………………………27

J. The Evidence Establishes Vitucci, Jr's Liability…………………………...…..27

    a. Plaintiff Has Established Vitucci, Jr's Liability Under Section 1981, the NYSHRL, and NYCHRL……………………………………………27

CONCLUSION....................................................................................................31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acheampong v. N.Y. City Health & Hosps. Corp.*,
105 WL 1333242 (S.D.N.Y. Mar. 25, 2015) ............................................................. 24

*Amtrak v. Morgan*,
536 U.S. 101 (2002) ................................................................................................ 11, 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 2

*Ash v. Tyson Foods, In*c.,
546 U.S. 454 (2006) .................................................................................................... 17

*Aspilaire v. Wyeth Pharmaceuticals, Inc.*,
612 F.Supp.2d 289 (S.D.N.Y. 2009) .......................................................................... 16

*Ayala v. Metro One Sec. Sys., Inc.*,
2011 WL 1486559 (E.D.N.Y. Apr. 19, 2011) .............................................................. 6

*Bennett v. Health Mgmt.. Sys., Inc.*,
92 A.D.3d 29 (1st Dep't 2011) ..................................................................................... 3

*Bien-Aime v. Equity Residential*,
2017 Westlaw 696695 (S.D.N.Y. Feb. 22, 2017) .................................................... 3, 24

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*,
411 F.3d 306 (2d Cir. 2005) ....................................................................................... 26

*Burlington Northern and Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ................................................................................................. 23, 24

*Carlton v. Mystic Transp., Inc.*,
202 F.3d 129 (2d Cir. 2000) ....................................................................................... 18

*Caskey v. County of Ontario*,
560 Fed. Appx. 57 (2d. Cir. 2014) .............................................................................. 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................................... 2

*i*

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
92 F.3d 81 (2d Cir.1996) ............................................................................... 14

*Collymore v. New York*,
767 Fed.Appx. 42 (2d Cir. 2019) ................................................................... 25

*Connecticut v. Teal*,
457 U.S. 440, 73 L. Ed. 2d 130, 102 S. Ct. 2525 (1982) .............................. 13

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995) ........................................................................ 4, 6

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000) .......................................................................... 23

*Cunningham v. N.Y.S. Dep't of Labor*,
326 Fed. Appx 617 (2d Cir. 2009) ................................................................. 16

*Daniel v. T&M Prot. Res., LLC*,
689 Fed.Appx. 1, 2 (2d Cir. 2017) ................................................................. 14

*Davis v. Metro. Transp. Auth.*,
2012 WL 727696 (S.D.N.Y. Mar. 6, 2012) .............................................. 27, 22

*DeCintio v. Westchester County Medical Center*,
821 F.2d 111 (2d Cir. 1987) .......................................................................... 26

*Desouza v. Office of Children and Family Services*,
2019 WL 2477796 (E.D.N.Y June 12, 2019) ................................................. 16

*Echeverri v. New York City Department of Sanitation*,
2016 WL 427914  (S.D.N.Y. February 3, 2016) .............................................. 3

*Ehrbar v. Forest Hills Hosp.*,
131 F.Supp.3d 5 (E.D.N.Y. 2015) .................................................................. 18

*Ellis v. Century 21 Dep't Stores*,
975 F.Supp.2d 244 (E.D.N.Y. 2013) .............................................................. 16

*Ewing v. Coca Cola Bottling Co. of N.Y., Inc.*,
2001 WL 767070 (S.D.N.Y. June 25, 2001) .................................................. 14

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004)................................................................................................. 3, 11

*Feldesman v. Interstate Hotels, LLC*,
2019 WL 1437576 (S.D.N.Y March 31, 2019) ........................................................................ 19

*Fitzgerald v. Henderson*,
251 F.3d 345 (2d Cir. 2011)............................................................................................ 7, 9, 11

*Furfero v. St. John's Univ.*,
94 A.D.2d 695 (2d Dep't 2012) ..................................................................................... 3, 20, 27

*Gallo v. Prudential Residential Serv.*,
22 F.3d 1219 (2d Cir. 1994)........................................................................................................ 2

*Garcia v. Barclays Capital, Inc.*,
281 F.Supp.3d 365 (S.D.N.Y. 2017)......................................................................................... 16

*Gorman v. Covidien, LLC*,
146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015) ................................................................... 28, 29

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000)................................................................................................. 12, 13

*Gryga v. Ganzman*,
991 F.Supp. 105 (E.D.N.Y 1998) ............................................................................................... 6

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010)...................................................................................................... 25

*Humphrey v. Cnty. of Nassau*,
2009 WL 875534  (E.D.N.Y. Mar. 30, 2009) .......................................................................... 11

*Jadoo v. City of New York*,
1997 WL 614508  (E.D.N.Y. Sept. 29, 1997) ............................................................................ 4

*Jamil v. Sessions*,
2017 WL 913601 (E.D.N.Y. Mar. 6, 2017) .............................................................................. 25

*Jaroslawicz v. Seedman*,
528 F.2d 727 (2d Cir. 1975)........................................................................................................ 2

*Jeffreys v. City of New York,*
426 F.3d 549 (2d Cir. 2005)................................................................................. 2

*Johnson v. County of Nassau,*
82 F.Supp.3d 533 (E.D.N.Y. 2015) ............................................................... 28, 29

*Johnson v. Palma,*
931 F.2d 203 (2d Cir. 1991)................................................................................. 4

*Joseph v. Leavitt,*
465 F.3d 87 (2d Cir. 2006)................................................................................. 10

*Kaytor v. Elec. Boat Corp.,*
609 F.3d 537 (2d Cir. 2010)............................................................................... 15

*Kirkland v. Cablevision Sys.,*
760 F.3d 223 (2d. Cir. 2014).............................................................................. 10

*Langford v. Int'l Union of Operating Engineers, Local 30,*
765 F. Supp. 2d 486 (S.D.N.Y. 2011)................................................................. 8

*Lauture v. International Business Machines Corp.,*
216 F.3d 258 (2d Cir. 2000)................................................................................. 6

*Leibowitz v. Cornell Univ.,*
584 F.3d 487 (2d Cir. 2009)............................................................................... 17

*Lihli Fashions Corp. v. NLRB,*
80 F.3d 743 (2d Cir. 1996)................................................................................. 6

*Littlejohn v. City of New York,*
795 F.3d 297, 321 (2d Cir. 2015).............................................................. 14, 17, 23

*Mandell v. Cnty. of Suffolk,*
316 F.3d 368 (2d Cir. 2003)............................................................................. 12, 17

*McCarthy v. Dun & Bradstreet Corp.,*
484 F.3d 184 (2d Cir. 2007)................................................................................. 2

*McLeod v. General Vision Servs.,*
2018 WL 3745662 (E.D.N.Y. August 6, 2018) ............................................ 28, 29, 30

*iv*

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ................................................................................................. 10

*Mihalik v. Credit Agricole Cheureux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ........................................................................ 17, 19, 22

*Morris v. Schroder Capital Mgmt. Int'l*,
481 F.3d 86 (2d Cir. 2007) ...................................................................................... 13

*National R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ................................................................................................. 9

*Ostrowski v. Atlantic Mut. Ins. Cos.*,
968 F.2d 171 (2d Cir. 1992) .................................................................................... 16

*Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*,
310 F.3d 43 (2d Cir. 2002) ...................................................................................... 26

*Patterson v. Cnty of Oneida*,
375 F.3d 206 (2d Cir. 2004) ...................................................................................... 8

*Philip v. City of New York*,
2012 WL 1356604 (E.D.N.Y. April 19, 2012) ........................................................ 9

*Philip v. GTECH Corp.*,
2016 WL 3959729 (S.D.N.Y. July 20, 2016) ........................................................ 18

*Pilgrim v. McGraw-Hill Cos.*,
599 F. Supp. 2d 462 (S.D.N.Y. 2009) .................................................................... 23

*Pryor v. Jaffe & Asher, LLP.*,
992 F.Supp.2d 252 (S.D.N.Y. 2014) ....................................................... 19., 20, 22

*Pucino v. Verizon Wireless Communications, Inc.*,
618 F.3d 112 (2d Cir 2010) .................................................................................... 11

*Quarantino v. Tiffany & Co.*,
71 F.3d 58 (2d Cir. 1995) ....................................................................................... 10

*Quinby v. WestLB AG*,
2007 WL 1153994 (S.D.N.Y. April 19, 2007) ...................................................... 16

*Raniola v. Bratton,*
243 F.3d 610 (2d Cir. 2001)........................................................................... 26, 27

*Reddy v. Salvation Army,*
591 F.Supp. 2d 406 ........................................................................................ 12

*Richardson v. New York State Dept. of Corr. Servs.,*
180 F.3d 426 (2d Cir. 1999)........................................................................... 10

*Risco v. McHugh,*
868 F.Supp.2d 75 (S.D.N.Y. 2012).................................................................. 23

*Rivera v. Rochester Genesee Reg'l Transp. Auth.,*
743 F.3d 11 (2d Cir. 2014)............................................................................. 14

*Rule v. Brine, Inc.,*
85 F.3d 1002 (2d Cir. 1996)............................................................................ 2

*Sanders v. New York City Human Res. Admin.,*
361 F.3d 749 (2d Cir. 2004)............................................................................ 26

*Signer v. Tuffy,*
66 Fed. Appx. 232 (2d Cir. 2003).................................................................... 10

*Taylor v. City of New York,*
207 F.Supp. 3d 293 (S.D.N.Y. 2016)................................................................ 7

*Tepperwien v. Entergy Nuclear Ops., Inc.,*
663 F.3d 556 (2d Cir. 2011)............................................................................ 24

*Thomas v. iStar Fin., Inc.,*
438 F. Supp. 2d 348 (S.D.N.Y. 2006).............................................................. 18, 25

*Tomka v. Seiler Corp.,*
66 F.3d 1295 (2d Cir. 1995)............................................................................ 29

*Torres v. Pisano,*
116 F.3d 625, 631 n.4 (2d Cir. 1997).............................................................. 14

*Van Zant v. KLM Royal Dutch Airlines,*
80 F.3d 708 (2d Cir. 1996).............................................................................. 8

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72, 90 .............................................................................................. 24

*Volpe v. N.Y.C. Dep't of Educ.*,
195 F. Supp. 3d 582 (S.D.N.Y. 2016).......................................................... 25

*Whidbee v. Garzarelli*,
223 F.3d 62 (2d Cir. 2000)............................................................................ 28

*Williams v. New York City Housing Auth.*,
61 A.D.3d 62 (1st Dept. 2009)...................................................................... 22

*Winston v. Verizon Servs. Corp.*,
633 F.Supp.2d 42 (S.D.N.Y. 2009)............................................................. 19

**Statutes**

NYCHRL ............................................................................................... passim

NYSHRL ............................................................................................... passim

Section 1981 ......................................................................................... passim

Title VII ............................................................................................... passim

## PRELIMINARY STATEMENT

Plaintiff Samuel E. Gerald ("Plaintiff"), an African-American man who worked for decades as a mechanic, yard laborer, and truck driver, seeks redress after he was subject to unlawful discrimination, a pervasive racially discriminatory and severely hostile workplace, and retaliation at the hands of his employers, Defendant Dominick Vitucci, Sr. ("Vitucci Sr.") and Defendant Dominick Vitucci, Jr. ("Vitucci Jr."), owners of Defendant Dominick Vitucci Truck Sales d/b/a Dom's Truck Sales ("Dom's Truck") and Defendant DCV Holdings ("DCV Holdings")(collectively known as "Defendants").

On July 21, 2017, the Equal Employment Opportunity Commission ("EEOC") issued a decision determining that Defendants "subjected [Plaintiff] to racially offensive harassment" and that "[Defendant]s' defenses do not withstand scrutiny." *See* the Declaration of Megan Goddard, Ex. 6.

On November 8, 2017, Plaintiff filed the instant case, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff filed an Amended Complaint on June 27, 2018.

Defendants categorically deny any wrongdoing and bring the instant Motion for Summary Judgment ("Defendants' Motion") seeking summary dismissal of Plaintiff's Amended Complaint. For the reasons set forth below, Plaintiff respectfully avers that Defendants' Motion should be denied in its entirety and this matter set down for trial.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Counter Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1"), the Defendants' Statement of Material Facts Pursuant to

1

Local Rule 56.1 ("Def. 56.1"), the Declaration of Plaintiff Samuel E. Gerald ("Pl. Dec."), the Declaration of Megan S. Goddard ("Goddard Dec."), and the exhibits attached thereto for a full recitation of the facts relevant to the determination of this motion.

## APPLICABLE LEGAL STANDARD FOR A SUMMARY JUDGMENT MOTION

The Second Circuit has ruled that the granting of a motion for summary judgment is a drastic remedy, which must be used "sparingly." *Gallo v. Prudential Residential Serv*., 22 F.3d 1219 (2d Cir. 1994). In making its determination, the Court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp*., 484 F.3d 184 (2d Cir. 2007). A fact is "material" if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id*. The burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, "the judge must ask ...whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996). If there are any doubts as to the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment must be denied. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975).

"In the context of employment discrimination cases, the Second Circuit has noted that 'an extra measure of caution is merited' when considering a motion for summary judgment 'because

2

direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.'" *Bien-Aime v. Equity Residential*, 2017 Westlaw 696695 at *4 (S.D.N.Y. Feb. 22, 2017). Indeed, "in discrimination cases where state of mind is at issue, we affirm a grant of summary judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

Notably, summary judgment is appropriate in NYCHRL cases only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under **_any_** theory. *See Bennett v. Health Mgmt.. Sys., Inc.,* 92 A.D.3d 29, 45 (1st Dep't 2011); *Furfero v. St. John's Univ.,* 94 A.D.2d 695 (2d Dep't 2012).

For the reasons set forth below, Defendants' Motion for Summary Judgement should be denied in its entirety.

## POINT I
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.  Under_line All Claims Against DCV Holdings Must Stand

Defendants contend that Plaintiff's Title VII claims against DCV Holdings must fail because Plaintiff did not list Defendant DCV Holdings in the third and fourth Causes of Action of his Amended Complaint. Given the Second Circuits' "strong preference for resolving disputes on the merits." *Echeverri v. New York City Department of Sanitation*, 2016 WL 427914 *4 (S.D.N.Y. February 3, 2016), Plaintiff asks this Court for a joinder of Defendant DCV Holdings to those specific causes of action for discrimination and retaliation under Title VII, pursuant to Rule 21, which states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may, at any time, on just terms, add or drop a party." DCV Holdings was "on notice" that Plaintiff was bringing this action against it for discrimination and retaliation under Title VII,

3

in that DCV Holdings is represented by the same counsel as the other Defendants, which will presumably continue as counsel in this action for all Defendants. *See Echeverri,* 2016 WL 427914 *4 (granted where department represented by counsel who would continue the case). DCV Holdings would not be prejudiced by their being liable under this statute*, id.,* because of the complex interrelatedness of the two companies, as further described, *infra*.

Defendants further contend that because Plaintiff did not name DCV Holdings as a Respondent in his EEOC charge, he cannot assert Title VII claims against that entity. Yet "[d]espite [Title VII's] technical requirement, 'courts have interpreted Title VII's procedural requirements flexibly and created several exceptions to this rule.'" *Jadoo v. City of New York*, 1997 WL 614508 *3 (E.D.N.Y. Sept. 29, 1997). One exception allows a Title VII action to be maintained against a party not named in the EEOC complaint when that party has a 'clear identity of interest' with a defendant named in the charge." *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir. 1995), (*citing Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)). The court must consider whether: (1) the role of the unnamed party could through reasonable effort by the complainant be ascertained by the Plaintiff at the time of the filing of the EEOC charge; (2) the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and, (4) the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Id*. at *10-11 (*citing Johnson*, 931 F.2d at 209-10.)

Here, given Plaintiff's lack of sophistication in these matters, the fact that he only knew his employer to be Dom's Truck, ("I don't even know who DCV Holdings is") (Pl. 56.1, ¶ 72),

and the complicated association between the two entities, the role of DCV Holdings could not be reasonably ascertained by Plaintiff at the time of filing his charge.  The interests of the entities in this byzantine business arrangement are the same, and so it was not necessary for Plaintiff to include DCV Holdings in the EEOC charge: Dom's Truck and DCV Holdings shared the same business address (Pl. 56.1, ¶ 67.1) and the same office space (Pl. 56.1, ¶ 62.9); Vitucci Jr. and Vitucci Sr. were the co-owners DCV Holdings (Pl. 56.1, ¶¶ 68.1, 68.3); the individual Defendants used the words "Vitucci Sr." and DCV Holdings interchangeably in their depositions (Pl. 56.1, ¶¶ 63.9, 63.10, 66.3); DCV Holdings was founded by Vitucci Jr., Vitucci Sr. and Carol Vitucci, (Pl. 56.1, ¶ 66.2); Vitucci Jr. was allegedly "Vice President" of DCV Holdings, while Vitucci Sr.  was Vitucci Jr.'s "business partner" at DCV Holdings (Pl. 56.1, ¶¶ 65.1, 66.2); DCV Holdings owned all of the properties where Dom's Truck conducted business (Pl. 56.1, ¶ 67.2); and where Dom's Truck paid no rent (Pl. 56.1, ¶ 67.5); Vitucci Sr. testified that he was the owner of 15 buildings owned by DCV Holdings (Pl. 56.1, ¶ 66.3); and DCV Holdings and Dom's Truck shared employees. (Pl. 56.1, ¶¶ 167-8). Given these co-mingled arrangements between DCV Holdings and Dom's Truck, DCV Holdings could not have been prejudiced by Plaintiff commencing a suit against Dom's Truck, and, as stated, *supra,* throughout the extensive history in this case, Dom's Truck and DCV Holdings have represented that the entities are jointly responsible for answering Plaintiff's complaint and litigating the case.

Defendants further contend that Plaintiff cannot maintain Title VII, Section 1981, NYSHRL or NYCHRL claims against DCV Holdings because the entity was not Plaintiff's "employer." Even should DCV Holdings not be Plaintiff's "employer" in the traditional sense (though Plaintiff does not concede this is the case), courts have found a corporate entity to be liable for the discriminatory acts of a separate, but related, entity via the "single employer doctrine,"

which applies under Title VII, Section 1981, the NYSHRL, and the NYCHRL. *Ayala v. Metro One Sec. Sys., Inc*., 2011 WL 1486559, at \*5 (E.D.N.Y. Apr. 19, 2011). Under this doctrine, a court will consider the (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id*. (*citing Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1240 (2d Cir. 1995)). Additional relevant factors include "use of common office facilities and equipment and family connections between or among the various enterprises." *Id*. (quoting *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996).

Here, Plaintiff performed extensive construction, demolition, and renovation work for DCV Holdings. (Pl. 56.1, ¶ 167) And regardless of whether Plaintiff received tax returns and W-2s from Dom's Truck, DCV Holdings and Dom's Truck functioned as a "single employer" for the purpose of Plaintiff's claims in that, as detailed, *supra*, the two entities had "interrelated operations" and "common ownership or financial control," and had "family connections between or among the various enterprises." *Ayala,* 2011 WL 1486559, at \*15. The companies also shared the same address (Pl. 56.1, ¶ 67.1) and office space (Pl. 56.1, ¶ 67.1). *Id*. As a "single employer," both DCV Holdings and Dom's Truck had the power to (1) select and hire Plaintiff; (2) terminate Plaintiff; (3) pay wages to Plaintiff ; and  (4) control Plaintiff's conduct . *See Gryga v. Ganzman*, 991 F.Supp. 105, 111 (E.D.N.Y 1998). Plaintiff also had a "contractual" relationship with both DCV Holdings and Dom's Truck under Section 1981. *See Lauture v. International Business Machines Corp.,* 216 F.3d 258 (2d Cir. 2000)(Plaintiff's promise to perform work for defendant, as consideration for plaintiff's promise to pay her, was a contractual relationship). As a "single employer," DCV Holdings and Dom's Truck are liable as Plaintiff's "employer" under  Title VII, Section 1981, the NYSHRL and the NYCHRL.

6

## B.  Defendants Have the Requisite Fifteen Employees for Liability Under Title VII

Defendants contend that they do not have the requisite fifteen employees to be covered under Title VII. However, on or about July 21, 2017, the EEOC determined that Defendants' practices violated Title VII, and that Defendants did in fact employ 15 or more employees.  *See* Goddard Decl. Exhibit 6.  In addition, Vitucci Jr. testified that many employees were paid "off the books," (Pl. 56.1, ¶ 159), and in Plaintiff's affidavit for his EEOC Charge he lists sixteen employees employed during the relevant time period, <u>not</u> including Carol Vitucci, Vitucci Sr. and an accountant named "Anthony," which totals 19 employees. (Pl. 56.1, ¶ 160; Goddard Dec., Ex. 5). Resolving all ambiguities in favor of the Plaintiff, there is a "genuine issue of material fact" as to how many employees Defendants employed during the relevant time period, and summary judgment should be denied on this basis.

## C.  Plaintiff's Claims are Not Time-Barred

Defendants contend that Plaintiff's claims are time barred by the applicable statutes of limitation for Title VII, the NYSHRL and the NYCHRL. However, if a Plaintiff can show a "continuing violation," he can challenge all conduct that was part of that violation, even conduct that occurred outside the Title VII, NYSHRL, and NYCHRL limitations periods. *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2011). *See also Taylor v. City of New York*, 207 F.Supp. 3d 293, 302 (S.D.N.Y. 2016)(the continuing violation doctrine of the NYSHRL and the NYCHRL mirror that of Title VII). A continuing violation under Title VII, NYSHRL and NYCHRL may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Taylor*, 207 F.Supp. 3d at 293.

If a continuing violation is shown, a Plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). Moreover, a claim of hostile work environment is considered timely so long as one act contributing to the claim occurred within the statutory period; if it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *Langford v. Int'l Union of Operating Engineers, Local 30,* 765 F. Supp. 2d 486, 496 (S.D.N.Y. 2011) ("The Second Circuit has equated [hostile work environment] claims with the 'continuing violation' doctrine.").

As an initial matter, Defendants' contention that Plaintiff's failure to check the "box" for a continuing violation, (*See* Defendants' Mem at 12), is specious at best, given that the dates Plaintiff specified in his EEOC Charge are from "Earliest: 1976" and "Latest: 2/10/2015" (approximately the date that Plaintiff was terminated). (Goddard Dec., Ex. 2, ¶¶ 145-152). These dates clearly indicate a continuing violation. Regardless, Plaintiff alleged a continuing violation in the facts of the Charge itself, submitted to the EEOC. (Goddard Dec., Ex. 3).

Plaintiff's job remained the same during the entire time he was employed by Defendants, (Pl. 56.1, ¶ 11) and his schedule remained the same as well. (Pl. 56.1, ¶¶ 83-84; Pl. Dec., ¶¶ 13, 17). Nonetheless, Plaintiff was paid less than white employees (Pl. 56.1, ¶¶ 74-75), was required to do more repulsive and dangerous work than white employees (Pl. 56.1, ¶¶ 79-80), was required to work longer hours than white employees, from 9:00 am to 8:00 or 9:00 pm and on weekends (Pl. 56.1, ¶¶ 83-84), was denied the same paid leave than white employees, (Pl. 56.1, ¶ 95; Pl. Dec., ¶¶ 20-21), and was forced to drive without a license unlike white employees (Pl. 56.1, ¶¶ 98, 100-101) continuously and without cessation during the entirety of his employment and up until

8

his termination. (Pl. Dec., ¶ 23). When Plaintiff protested any of these things, Vitucci Sr. responded with threats and racial slurs. (Pl. Dec., ¶¶ 24, 42). Defendants' last refusal to pay Plaintiff's traffic tickets occurred close to the date of his termination. (Pl. 56.1, ¶ 141). Plaintiff also experienced a severe and pervasive hostile work environment at the hands of Vitucci Jr. and Vitucci Sr. that continued regularly, without cessation, from the moment he began working for Defendants, up and until his termination. (Pl. 56.1, ¶¶ 44.5, 49.1, 106, 107, 108, 116, 123, 131, 154, 164; Pl. Dec., ¶ 27). *See Fitzgerald,* 251 F.3d at 345 (continuing violation found where Plaintiff alleged that the discriminatory acts were "ongoing," "repeated," and occurred "day to day").

Not only did Vitucci Sr. and Vitucci Jr. permit this discriminatory and hostile conduct to continue unremedied, they were the perpetrators of the conduct, which amounted to a policy of practice at Defendants of committing and condoning discriminatory behavior. *See Van Zant*, 80 F.3d at 713. As such, the continuing violation applies in this case, and Plaintiff can challenge conduct occurred outside the Title VII, NYSHRL, and NYCHRL limitations periods.

Notably, even if it were determined that the continuing violation does not apply in this case, the facts relating to events that occurred prior to the statute of limitations may still be considered by the court in determining Plaintiff's timely discrimination claims. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). *See also Philip v. City of New York*, 2012 WL 1356604, at *6 (E.D.N.Y. April 19, 2012)(same).

**D. Plaintiff Has Established a *Prima Facie* Case of Race Discrimination under Title VII and the NYSHRL**

  **a. Applicable Law**
    **i. Title VII and NYSHRL**

To establish a *prima facie* of race discrimination under Title VII and the NYSHRL Plaintiff must proffer evidence that "(1) he belongs to a protected group; (2) he was qualified for his

position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an inference of race discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d. Cir. 2014). Notably, a plaintiff's "burden of proof in a discrimination action is *de minimis* at the *prima facie* stage." *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 65-66 (2d Cir. 1995).

**b. Plaintiff Has Established His *Prima Facie* Case of Race Discrimination under Title VII and the NYSHRL**

It is undisputed Plaintiff meets the first two prongs of the *prima facie* analysis: that as an African-American man, he is a member of a protected class, and was qualified for his position. *See Kirkland,* 760 F.3d at 225. (Pl. 56.1, ¶ 46). Defendants contend that Plaintiff failed to establish that he was subjected to an adverse employment action giving rise to an inference of discrimination. Defendants' arguments must be rejected.

**i. Plaintiff Was Subjected to Multiple Adverse Actions**

The United States Supreme Court has noted that "[t]he terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment … in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). "A Plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of her employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). Generally, adverse employment actions are considered "material" if they are "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Signer v. Tuffy*, 66 Fed. Appx. 232, 235 (2d Cir. 2003). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999).

An adverse employment action includes, *inter alia*, termination, denial of benefits, denial of training, intolerable shift assignments, *Humphrey v. Cnty. of Nassau*, 2009 WL 875534 *5 (E.D.N.Y. Mar. 30, 2009), a disproportionally heavy workload, *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004), the assignment of unreasonably dangerous working conditions, *Pucino v. Verizon Wireless Communications, Inc.,* 618 F.3d 112, 118 (2d Cir 2010); the creation of a hostile work environment, *Amtrak v. Morgan*, 536 U.S. 101, 117 (2002), and constructive termination. *Fitzgerald,* 251 F.3d at 345.

Defendant argues that Plaintiff has failed to established a *prima facie* case because there was no adverse action taken against him by Dom's Truck because the evidence establishes that he was not terminated but he "stopped showing up for work." (*See* Defendants' Mem. at p. 16). On the contrary, Plaintiff has sustained multiple an adverse employment actions, including, but not limited to, his termination, that resulted in a materially adverse change in the terms and conditions of his employment.

Plaintiff did not voluntarily resign from Defendants. As the record reflects, he was summarily terminated by Vitucci Sr. when he asked for higher pay, paid leave, and better treatment. (Pl. 56.1, ¶¶   48.1, 48.3; Pl. Dec. ¶¶ 41-47). Defendants' contention that Plaintiff "voluntarily resigned" and did "not show up to work and moved to North Carolina" or even that he expressed *interest* in moving to North Carolina, (Defendants' Mem. at p. 16), is contrary to Plaintiff's testimony that Vitucci Sr. specifically asked his wife, Carol Vitucci, to terminate Plaintiff's employment because Plaintiff had requested the same pay as other co-workers, who were not African American. (Pl. 56.1, ¶¶  149-150; Pl. Dec. ¶¶ 46-7). In fact, Plaintiff told Vitucci Sr. when he asked for a raise and vacation that he simply could not afford to live in New York on the unfair wages that Defendants paid him. (Pl. 56.1, ¶ 19.2; Pl. Dec. ¶ 41). Defendants' contention

that Plaintiff has failed to adduce evidence that he was terminated because he was African-American is belied by the racial hostility Plaintiff experienced when he was terminated, with Vitucci Sr. stating, "you ain't going nowhere nigger, I own you." (Pl. 56.1, ¶ 151).

Plaintiff's disparate treatment in comparison with white co-workers, was also an adverse action. *Reddy v. Salvation Army*, 591 F.Supp. 2d 406 ("A common way for Plaintiff's to establish a *prima facie* case of discrimination is to demonstrate disparate treatment of other similarly situated employees.") In order to establish an inference of discrimination, the comparator employee must be "similarly situated in all material respects" to the Plaintiff. *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003).

In determining whether employees are similarly situated, a court considers a number of factors including, but not limited to: (i) whether they were "subject to the same performance evaluation and discipline standards;" (ii) whether they "engaged in comparable conduct;" and (iii) whether they reported to the same supervisor). *See Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff and Defendants' white employees were "similarly situated" in all material respects, in that Plaintiff performed the same work as white co-workers, including repairing and driving trucks, labor in the yard, mechanic work, changing tires and batteries, and manual labor. (Pl. 56.1, ¶ 10). Plaintiff and the white employees reported to the same supervisors: Vitucci Jr. and Vitucci Sr. (Pl. 56.1, ¶ 63.1-63.11; Pl. Dec. ¶ 50).

As the testimonial evidence reflects, Defendants paid similarly situated white employees substantially more than Plaintiff, regardless of the tasks that they completed and the hours that he worked (Pl. 56.1, ¶ 53.1; Pl. Dec. ¶ 10); denied Plaintiff the same paid leave (and in fact any leave at all for most of his employment) as his white counterparts, who did receive paid vacation leave

(Pl. 56.1, ¶ 54.3; Pl. Dec. ¶¶ 20-1); obstructed Plaintiff from obtaining a driver's license, unlike white employees, which denied him the ability to get any other trucking job; (Pl. 56.1, ¶¶ 97-98, 100, 104; Pl. Dec. ¶ 26); required Plaintiff and black employees, and not white employees, to do dangerous and repulsive work, including cleaning out repulsively dirty trash trucks with their bare hands, (Pl. 56.1, ¶ 79) and sandblasting, which involved breathing dangerous fumes without protective gear, (Pl. 56.1, ¶ 80); required Plaintiff to work significantly longer hours and on the weekends, unlike white employees (Pl. 56.1, ¶¶ 83, 84); and refused to pay Plaintiff's traffic tickets incurred while he was working for Defendants, unlike his white counterparts. (Pl. 56.1, ¶¶ 89, 93; Pl. Dec. ¶¶ 18-19).

Defendants argue that because some Black employees were also allowed to take paid vacation, Plaintiff cannot establish that his requests to take paid vacation constituted an adverse employment action. However, "[s]ince Title VII's principal focus is on protecting individuals, rather than a protected class as a whole, an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) (*citing Connecticut v. Teal*, 457 U.S. 440, 453-55, 73 L. Ed. 2d 130, 102 S. Ct. 2525 (1982)).

An adverse employment action may also take the form of a constructive discharge, which occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Caskey v. County of Ontario*, 560 Fed. Appx. 57, 59 (2d. Cir. 2014) (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007)). Working conditions are intolerable when, viewed as a whole, they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 89

13

(2d Cir.1996). Here, Plaintiff testified to numerous egregious instances of discrimination and a severe hostile work environment at the hands of Defendants, *see, infra*, and any reasonable person forced to work under similarly racially hostile conditions would find such conditions to be intolerable.

Defendants also subjected Plaintiff to a hostile work environment, an adverse employment action. *See Amtrak*, 536 U.S. at 117. Under Title VII and NYSHRL, a Plaintiff must demonstrate that 1) he is a member of a protected class; 2) he experienced unwelcome harassment; 3) the harassment was based on his membership in the protected class; and 4) the harassment was severe and pervasive enough to create a hostile work environment. *Ewing v. Coca Cola Bottling Co. of N.Y., Inc.,* 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001). "The conduct must be 'severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)). *Daniel v. T&M Prot. Res., LLC*, 689 Fed.Appx. 1, 2 (2d Cir. 2017) (internal citations omitted). The Second Circuit has held that "the one-time use of a severe racial slur could, by itself, support a hostile work environment claim when evaluated in the cumulative reality of the work environment." *Daniel* at 2. 689 Fed.Appx. at 2; *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014). *See Torres v. Pisano,* 116 F.3d 625, 631 n.4 (2d Cir. 1997)(even a single episode of harassment, if severe enough, can establish a hostile work environment). *See also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014)(hostile work environment where a supervisor alleged used the slur "nigger" the presence of his subordinates).

Plaintiff testified that throughout the entirety of his tenure working for Defendants, Vitucci Sr. and Vitucci Jr. would verbally abuse him by calling him racist epithets "all the time." (Pl. 56.1,

¶¶ 106, 121, 164). The racial slurs used by the individual defendants against Plaintiff include, *inter alia*, "you ain't going nowhere nigger, I own you," (Pl. 56.1, ¶ 151); "nigger, I'll have a bullet put in your head," (Pl. 56.1, ¶ 108); "nigger I'll blow your fucking head off" (Pl. 56.1, ¶ 109); "we have a nigger [President Obama] in the White House" (Pl. 56.1, ¶ 110); "black motherfucker," (Pl. 56.1, ¶¶ 113, 115, 116); "black criminal" (Pl. 56.1, ¶ 123); "fucking mutt." (Pl. 56.1, ¶¶ 124, 125); "cock sucker" and "piece of shit." (Pl. 56.1, ¶¶ 126, 127).

Vitucci Sr. made racially discriminatory comments to Plaintiff, such as, *inter alia*, "black guys want to have Cadillacs but can't buy the gas," (Pl. 56.1, ¶ 129); "why do black girls have children and can't afford to feed them," and "why do they have ten kids and welfare," (Pl. 56.1, ¶ 129) "why [do] black people got big lips," (Pl. 56.1, ¶ 129) "is it true that black people's penis is big," (Pl. 56.1, ¶ 129). Vitucci Sr. also told the Plaintiff that his wife was a "squaw" and was at home "sitting on her fat ass." (Pl. 56.1, ¶¶ 130, 136). Defendants' also used racial slurs and derogatory language towards other minorities in Plaintiff's presence. (Pl. 56.1, ¶ 134).

Vitucci, Jr. and Vitucci Sr. also made serious threats of physical harm and violence against Plaintiff, while calling him racial slurs. (Pl. 56.1, ¶ 137). *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 552 (2d Cir. 2010) ("a rational juror may permissibly find that a reasonable employee would view any serious death threat or threat of physical harm as sufficiently severe to alter the employee's working conditions and create an abusive environment."). Moreover, Defendants obstructed Plaintiff from getting a driver's license, (Pl. Dec. ¶ 25) causing him to incur thousands of dollars in traffic tickets, (Pl. 56.1, ¶ 103) thereby keeping him trapped and dependent on them for work up to and until his termination. (Pl. 56.1, ¶ 45.2). There is no question that Plaintiff suffered a hostile work environment under Title VII and the NYSHRL, and that this was an adverse employment action giving rise to an inference of discrimination.

Even if the Court were to find that Plaintiff's termination, disparate treatment, or hostile work environment were not individually adverse, "a combination of seemingly minor incidents" may form the basis for an adverse employment action once the incidents "reach a critical mass." *Aspilaire v. Wyeth Pharmaceuticals, Inc*., 612 F.Supp.2d 289, 305 (S.D.N.Y. 2009). *See also Cunningham v. N.Y.S. Dep't of Labor,* 326 Fed. Appx 617 (2d Cir. 2009). Accordingly, when viewed cumulatively, and resolving all ambiguities and crediting all factual inference in favor of Plaintiff, these constitute an adverse employment action.

### c.  These Adverse Actions Occurred Under Circumstances Giving Rise to an Inference of Discrimination

Defendants argue that Plaintiff's termination did not occur under circumstances giving rise to an inference of discrimination, in that he cannot establish that he was terminated because he was African American. But Plaintiff has raised a material issue of fact as to whether he suffered adverse actions on account of his race, and Defendants' Motion should be denied.

The standard used to establish an inference of discrimination is a "flexible [one] that can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores*, 975 F.Supp.2d 244, 271 (E.D.N.Y. 2013). In determining whether an inference of discrimination exists, "the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." *Quinby v. WestLB AG*, 2007 WL 1153994, at *6 (S.D.N.Y. April 19, 2007)(internal citations omitted).

Direct evidence of discrimination consists of "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude." *Ostrowski v. Atlantic Mut. Ins. Cos*., 968 F.2d 171, 182 (2d Cir. 1992); *Desouza v. Office of Children and Family Services*, 2019 WL 2477796 at *4 (E.D.N.Y June 12, 2019), *citing Garcia v. Barclays Capital, Inc.,* 281 F.Supp.3d 365, 376 (S.D.N.Y. 2017). Here,

the record contains direct evidence of Defendants' discriminatory animus in the form of Defendants' regular use of explicit racial slurs and comments when referring to Plaintiff, *see supra*, giving rise to an inference of discrimination. Evidence of this discriminatory animus also arose during Vitucci Sr.'s deposition, when he called Plaintiff "boy," a derogatory term for black people. (Pl. 56.1, ¶ 105). *Ash v. Tyson Foods, In*c., 546 U.S. 454 (2006) (an employer's use of the word "boy" to describe black employees can be evidence of discriminatory animus).

An inference of discrimination may also arise from circumstances including "the more favorable treatment of employees not in [a] protected group." *Littlejohn,* 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ*., 584 F.3d 487, 502 (2d Cir. 2009)). In order to establish an inference of discrimination, the comparator employee must be "similarly situated in all material respects" to the Plaintiff. *Mandell,* 316 F.3d at 379.

Here, Plaintiff has established the fourth prong of his *prima facie* case of race discrimination under Title VII and the NYSHRL. As stated, *supra*, Plaintiff and Defendants' white employees were "similarly situated" in all material respects. *Id.* Also as stated, *supra*, Plaintiff was treated significantly "less favorably," and in fact much more poorly, than similarly situated white employees: Defendants paid Plaintiff less, regardless of the tasks that he completed and the hours that they worked (Pl. 56.1, ¶ 53.1; Pl. Dec. ¶¶ 10, 12); denied Plaintiff the same paid leave (and in fact any leave at all for most of his employment) as his white counterparts (Pl. 56.1, ¶ 54.3; Pl. Dec. ¶¶ 20-21); obstructed Plaintiff from obtaining a driver's license, unlike white employees (Pl. 56.1, ¶¶ 97, 98, 100, 104; Pl. Dec. ¶ 25); required Plaintiff and black employees, and not white employees, to do dangerous and repulsive work (Pl. 56.1, ¶ 79); required Plaintiff to work significantly longer hours and on the weekends, unlike white employees (Pl. 56.1, ¶¶ 83, 84); and

refused to pay Plaintiff's traffic tickets incurred while he was working at Defendants, unlike his white co-workers (Pl. 56.1, ¶¶ 89, 93; Pl. Dec. ¶¶ 18-19).

Defendants argue that Plaintiff cannot establish an inference of race discrimination because of the same actor inference. "Although the inference can undermine a *prima facie* case, 'the inference is less compelling when a significant period of time elapses between the [events].'" *Ehrbar v. Forest Hills Hosp.*, *131* F.Supp.3d 5, 25 (E.D.N.Y. 2015) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000)). Here, Plaintiff's long history working for Defendants renders the same actor inference inapplicable. (Pl. 56.1, ¶ 9.1; Def. 56.1 ¶ 9). *See Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 361 (S.D.N.Y. 2006) ("In the Second Circuit, the inference no longer applies when more than two years separate the hiring and firing."), *aff'd*, 629 F.3d 276 (2d Cir. 2010). Furthermore, "the [same actor] inference is not dispositive where others— notably, the inference of discrimination that can be drawn from racist slurs—strongly cut the other way." *Philip v. GTECH Corp*., 2016 WL 3959729 *43 (S.D.N.Y. July 20, 2016). As the evidence of Defendants' discriminatory animus and discriminatory treatment creates a strong inference of discrimination, the same actor inference does not vitiate Plaintiff's race discrimination claims. As such, resolving all ambiguities in favor of Plaintiff, Plaintiff has established a *prima facie* case under Title VII and the NYSHRL, or raised a "genuine issue of material fact" that he did so, requiring the dismissal of Defendants' Motion.

### E. Plaintiff Has Established His More Lenient Burden Under the NYCHRL

Plaintiff has undoubtedly satisfied the more lenient standard for establishing race discrimination under the NYCHRL. Preliminarily, it is well-settled that a plaintiff who sufficiently states a claim of discrimination under the NYSHRL and/or Title VII, also establishes a claim for discrimination under the NYCHRL. *Pryor v. Jaffe & Asher, LLP.,* 992 F.Supp.2d 252, 260

(S.D.N.Y. 2014). *Winston v. Verizon Servs. Corp.,* 633 F.Supp.2d 42, 48 (S.D.N.Y. 2009) ("[I]f a plaintiff successfully states a claim under the NYSHRL, then *a fortiori* she has stated a claim under the NYCHRL"). As discussed, *supra,* Plaintiff has clearly stated viable claims of race discrimination and hostile work environment under Title VII and the NYSHRL. However, even if Plaintiff has not established his claims under Title VII and the NYSHRL (which he has), Plaintiff has indisputably satisfied the standard for race discrimination under the lower legal threshold set forth by the NYCHRL.

Plaintiff's burden under the NYCHRL is significantly more lenient and expressly more protective than that of Title VII and the NYSHRL. *Pryor,* 992 F.Supp.2d at 259. As the Second Circuit has made clear, the provisions of the NYCHRL are to "be construed liberally … regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded … have been so construed." *Mihalik v. Credit Agricole Cheureux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013). To establish a claim of discrimination under the NYCHRL, Plaintiff "need only show differential treatment – that he is treated less well – because of a discriminatory intent." *Pryor,* 992 F.Supp.2d at 257. The NYCHRL prohibits discrimination from playing any role in decisions related to employment. *Feldesman v. Interstate Hotels, LLC*, 2019 WL 1437576 *8 (S.D.N.Y March 31, 2019). As a result, "the question on summary judgment is whether there exist triable issues of fact that discrimination was *one of* the motivating factors for the defendant's conduct." *Feldesman,* 2019 WL 1437576 at *8. Under this more liberal standard, even a single comment can suffice to carry Plaintiff's burden of demonstrating discrimination. *See, id.*, at 111.

Here, as detailed *supra*, the record is replete with instances where plaintiff was "treated differently" and "less well" because of Defendants' discriminatory intent. *See Pryor*, 992

F.Supp.2d at 257. As described, *supra*, Plaintiff was subjected to discriminatory, harassing, and hostile comments based on his race, and was treated less well than his white comparators based upon his race. Plaintiff was subject to multiple, egregious, and debilitating comments, such as the "nigger" and "black bastard," where "even a single comment can suffice to carry his burden of demonstrating discrimination." *See, id.*, at 111. To reiterate, summary judgment is appropriate in NYCHRL cases **only** if the record establishes as a matter of law that a reasonable jury could not find the employer liable under **any** theory. *See Furfero v. St. John's Univ.,* 94 A.D.2d 695 (2d Dep't 2012). Accordingly, Plaintiff has more than satisfied his *more lenient* burden under the NYCHRL and Defendants' Motion should be denied.

**F.  Plaintiff Has Established a *Prima Facie* Case of a Hostile Work Environment Under Title VII and the NYSHRL**

**a.  Defendants' Conduct Created a Subjectively Abusive Working Environment and Altered the Conditions of Plaintiff's Employment**

As stated, *supra*, Plaintiff has established a *prima facie* case that he suffered a "severe and pervasive" hostile work environment that "altered the conditions of his employment" under Title VII and the NYSHRL. *See Ewing,* 2001 WL 767070, at *7. For the reasons below, Plaintiff also establishes that he subjectively *perceived* that this environment was abusive.

Defendants contend that because Plaintiff allegedly joked with his colleagues, allegedly made racist jokes about white people, "loved" his job, didn't seek employment elsewhere, and that he was "not bothered" by being called "black," he did not find the work environment to subjectively hostile. (*See* Defendants' Mem. of Law, at pp. 27-28). Defendants' claim that Plaintiff made racist jokes about white people is a mischaracterization of Plaintiff's testimony: He testified that only one time he chimed in with a retort against white people, although his feelings were hurt, and that he never got involved in a similar type of dialogue again after that. (Pl. 56.1, ¶ 55.1). The

fact that Plaintiff "loved" the work he did (meaning, his daily tasks for Defendants) also does not preclude the fact that Plaintiff was utterly degraded and humiliated because the work environment was filled with racial slurs, hostility, and threats. (Pl. Dec. ¶ 32).

Plaintiff did not attempt to seek employment elsewhere not because he did not perceive this objectional work environment to be hostile, but because he was manipulated and trapped in a job that he could not leave: Plaintiff was coerced to begin working for Defendants as a child laborer, (Pl. 56.1, ¶¶ 45.2, 117) and ordered to drop out of high school or he would be fired, and told that high school was "useless" for someone like him (Pl. 56.1, ¶ 45.2;  Pl. Dec. ¶ 5). Plaintiff needed the money and needed to support his family, and so he dropped out of high school like Vitucci, Sr. ordered. (Pl. Decl. ¶ 6). Defendants barred Plaintiff from getting a driver's license by forcing him to drive without a license and causing him to be issued many traffic violations, (Pl. 56.1, ¶¶  97, 98, 100, 104; Pl. Dec. ¶¶ 23-5) thereby keeping him trapped and dependent on Defendants. Defendants' assertion that Plaintiff did not mind being called "black" by Vitucci Jr. is a misconstruction of Plaintiff's testimony. Plaintiff clearly meant that he would ignore Vitucci Jr.'s racist remarks and just mind his business and do his work:

> Q.    Did it bother you that he called you Black?
> A.    No, 'cause I was in a think of working taking care of something. So at that time I looked at it like, what I gotta do, you know.
> (Pl. Tr. 204:4-9)

In addition, the effect on an employee's psychological well-being is relevant to determining whether an employee actually found the environment abusive for purposes of a hostile work environment claim. *Fitzgerald*, 251 F.3d at 358. The record is replete with evidence that Plaintiff was uncomfortable, fearful, isolated, ostracized, and humiliated as a result of the decades-long hostility that Plaintiff faced. (Pl. 56.1, ¶ 44.1, 44.2, 44.5). In addition, Plaintiff testified that he suffered from stress and depression caused by working for Defendants. (Pl. 56.1, ¶ 44.4).

Plaintiff's medical documents indicate that Plaintiff still suffers from depression caused by a history of emotional abuse from Defendants, (Pl. 56.1, ¶ 44.6; Goddard Dec., Ex. 8 (at P.16 and P.21), and he still has a fear of Vitucci Sr. and Vitucci, Jr. due to the abusive environment in which he was forced to work. (Pl. 56.1, ¶ 44.3; Goddard Dec., Ex. 8 (at P.7, P.11, and P.20). In short, Plaintiff subjectively viewed the hostile work environment as abusive, and that it was so severe that it changed the terms and conditions of his employment. Crediting all factual inferences that could reasonably be drawn in Plaintiff's favor, he has established that he subjectively viewed the environment created by Defendants to be abusive and racially hostile.

### G. A Reasonable Juror Could Conclude that Plaintiff Was Subject to a Hostile Work Environment Under NYCHRL

Plaintiff has similarly satisfied his more lenient burden of establishing a hostile work environment based on race under the NYCHRL. Under the NYCCHRL, Plaintiff need not prove that the harassment was severe or pervasive in order to be actionable. *See Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 76-78 (1st Dept. 2009). A stated, *supra*, a plaintiff need only show that he was "treated less well" than other employees because of his race. *Davis* at *5-6. Under this more liberal standard, "even a single comment … can be actionable." *Mihalik*, 715 F.3d at 110.

As stated, *supra*, the record is replete with examples that Plaintiff suffered "differential treatment" and was "treated less well" because of Defendants' discriminatory intent. *See Pryor* at 257. Though even a "single comment" can be actionable, *Mihalik* at 715 F.3d at 111, Plaintiff was subject to multiple and repeated racially charged comments throughout his employment, *see supra*. Based on the foregoing, as Plaintiff has, at a minimum, raised a triable issue of fact regarding his claims under the NYCHRL, and Defendants' Motion must be denied.

22

H. **Plaintiff Has Established a *Prima Facie* Case of Retaliation Under Title VII, Section 1981, and the NYSHRL**

Defendants contend that Plaintiff cannot sustain his claims of retaliation because his complaints did not constitute protected activity, and he failed to show a causal connect between his complaints and any adverse employment action. (*See* Defendants' Mem. at p. 25). However, Defendants ignore the evidence and highlight a minimum number of facts to support their arguments.

Under 1981, Title VII, and the NYSHRL, "[t]o establish a *prima facie* case of retaliation, a Plaintiff must show that: 1) he participated in a protected activity; 2) his employer was aware of that activity; 3) he suffered an adverse action; and 4) there was a causal connection between the protected activity and the adverse employment action." *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009)(*citing, inter alia*, *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Plaintiff has established his *prima facie* case of retaliation under these statutes.

a. **Plaintiff Engaged in Protected Activity**

"[I]f an employee . . . is critical about the discriminatory employment practices of [his] employer, that employee has engaged in a protected activity." *Littlejohn*, 795 F.3d at 318. An employee's criticism of his employer's employment practices "need not rise to the level of a formal complaint in order to receive statutory protection." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000). "Protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management." *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012).

Plaintiff has established that he engaged in protected activity. Plaintiff repeatedly protested the fact that he was paid less than his similarly situated white co-workers, and that he was denied

vacation leave in contrast to his similarly situated co-workers to Vitucci Sr., one of his managers, (Pl. 56.1, ¶¶ 150-151), including immediately prior to his termination. (Pl. 56.1, ¶¶ 150-151).

Plaintiff also engaged in protected activity when he opposed the hostile work environment he suffered. Plaintiff testified that he repeatedly asked Vitucci Sr. to stop calling him "nigger," (Pl. 56.1, ¶ 50.1), and in December, 2014, Plaintiff asked Vitucci Sr. to stop calling him a "black bastard. (Pl. Dec. ¶ 24). Plaintiff also testified that he asked Vitucci Jr. to stop calling him a "black motherfucker." (Pl. 56.1, ¶ 50.2). Plaintiff also repeatedly complained to Carol Vitucci, who was part of Defendants' management, about the individual Defendants' abusive use of racial slurs, including on or about January 27, 2015. (Pl. 56.1, ¶ 155; Pl. Dec. ¶ 39). Patricia Gerald testified to regularly witnessing Plaintiff opposing the longer hours (in comparison with similarly situated white co-workers) to Vitucci Sr. (Pl. 56.1, ¶ 156). On his last day of work, plaintiff also objected to the individual Defendants' refusal to pay for his traffic tickets, unlike his white co-workers. (Pl. 56.1, ¶ 158). All of this was protected activity, and Plaintiff has thereby established the first prong of his *prima facie* case.

### b.  Plaintiff Suffered Adverse Actions for Engaging in Protected Activity

"The Second Circuit has construed 'adverse employment action' to be broader for retaliation claims than for discrimination claims." *Bien-Aime*, 2017 Westlaw 696695 at *7 (quoting *Acheampong v. N.Y. City Health & Hosps. Corp*., 105 WL 1333242 at *12 (S.D.N.Y. Mar. 25, 2015)). In the retaliation context, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 90 (quoting *Burlington,* 548 U.S. 53 at 57). In these cases, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc*., 663 F.3d 556, 568 (2d Cir. 2011). Even

24

minor acts that would be immaterial in some situations may be material in others. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). (Summary judgment denied where employer was found to have "stopped saying good morning" or saying a warm welcome to plaintiff, began monitoring plaintiff, and questioned Plaintiff on incurring employee overtime without prior approval); *See also*, *Collymore v. New York,* 767 Fed.Appx. 42, 46 (2d Cir. 2019) (summary judgment denied where employer forced employee to work through her lunch hour despite knowing of her need to eat at specific times to avoid migraines). Plaintiff suffered multiple adverse actions because he engaged in protected activity.

 i. <u>Plaintiff Suffered the Adverse Actions of a Retaliatory Hostile Work Environment, Forced Unpaid Leave, and Termination Has a Result of Engaging in Protected Activity</u>

"A hostile work environment may constitute an adverse employment action in the context of a retaliation claim." *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 595 (S.D.N.Y. 2016) (citing *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006)). Here, as discussed, *supra*, Plaintiff suffered a severely hostile work environment at the hands of Vitucci, Jr. and Vitucci, Sr. after he repeatedly complained about his long hours, lack of vacation pay, and the racial slurs, *infra*, which resulted in Vitucci Sr.'s statements: "you ain't going nowhere nigger, I own you" (Pl. 56.1, ¶ 151), "I will have my son put a bullet in your head, nigger" (Pl. 56.1, ¶ 158) and "who the fuck are you for [me] to respect you, you fucking mutt." (Pl. 56.1, ¶ 153), and "black motherfucker" (Pl. Dec. ¶ 24) in response to Plaintiff's objections to discriminatory treatment.

Forcing an employee to take unpaid leave in retaliation for exercising their rights under Title VII is also an adverse action under Title VII. *See Jamil v. Sessions,* 2017 WL 913601 at *8 (E.D.N.Y. Mar. 6, 2017). Here, Defendants repeatedly forced Plaintiff to take unpaid leave as punishment for his opposition to their discriminatory conduct. (Pl. 56.1, ¶¶ 15.1, 153)

In addition, termination is a material adverse action. *See Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002). Here, Plaintiff testified that he was fired in February, 2015 for complaining about discriminatory wages and vacation leave. (Pl. 56.1, ¶¶ 51.1-2). Defendants claim that Plaintiff was not terminated, but voluntarily resigned, are contrary to the evidence, *see supra*. In the alternative, and should it be determined that Plaintiff was not terminated, given the severe hostile work environment Plaintiff suffered, there is no question that his separation from employment would constitute a constructive discharge as a matter of law. *See Caskey,* 560 Fed. Appx. at 59.

### c.   Plaintiff Has Established a Causal Connection Between the Protected Activity and the Adverse Actions

Plaintiff has sufficiently alleged a causal connection between his complaints and the adverse actions. Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant. *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir. 1987). Because Courts recognize that most retaliation "is not carried out so openly as to provide direct proof of it," (*Sanders v. New York City Human Res. Admin*., 361 F.3d 749, 755 (2d Cir. 2004)), a Plaintiff's burden to establish a causal connection is "a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement." *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001). *See also*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist*., 411 F.3d 306, 314 (2d Cir. 2005). Plaintiff has established a causal connection because, as discussed *supra*, his testimony evinces complaints followed directly by retaliatory actions in the form of a severe hostile work environment, forced unpaid leave, termination, and constructive termination.

26

## I. __A Reasonable Juror Could Conclude that Plaintiff Suffered Retaliation Under the NYCHRL__

Under the NYCHRL, a plaintiff need only show that he "took an action opposing [his] employer's discrimination, and … the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, at 112. An employee opposes his employer's actions when he "ma[kes] clear [his] disapproval of [the employer's] discrimination by communicating to [him], in substance, that he thought [his] treatment of [him] was wrong." *Id*. Importantly, a plaintiff asserting retaliation under the NYCHRL "need not show that he suffered a materially adverse action." *Davis v. Metro. Transp. Auth.,* 2012 WL 727696, at *10 (S.D.N.Y. Mar. 6, 2012).  Under the NYCHRL standard, a plaintiff need only show that the retaliatory action took place after the protected activity. *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001).

Here, as described *supra*, Plaintiff took several actions opposing his discrimination and the hostile work environment, and in response Defendants hurled racial slurs at him,  threatened him, forced him to take unpaid leave, and terminated him, all conduct that would reasonably deter any person from objecting to discrimination and harassment. Based on the foregoing, Plaintiff has established liability under the *more lenient* standard under the NYCHRL. *Furfero v. St. John's Univ.,* 94 A.D.2d 695 (2d Dep't 2012)(summary judgment is appropriate in NYCHRL cases only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under *__any__* theory), and a reasonable juror could conclude that Plaintiff engaged in protected conduct and was subject to actions that would reasonably deter him, or others, from raising complaints of discrimination. Thus, Defendants' Motion should be denied.

## J. __The Evidence Establishes Vitucci Jr's Liability__

### a. __Plaintiff Has Established Vitucci Jr's Liability Under Section 1981, the NYSHRL, and NYCHRL__

Defendants incorrectly contend that Vitucci Jr. cannot be held personally liable under Section 1981, NYSHRL, and NYCHRL. Individuals may be held liable under § 1981 where there is "some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli*, 223 F.3d 62, 75 (2d Cir. 2000). Under this standard, there must be some "personal involvement" on the part of the individual in question. *Id*.

The NYSHRL allows for individual liability if a Defendant "actually participates" in the discriminatory conduct. *Johnson v. County of Nassau*, 82 F.Supp.3d 533, 536 (E.D.N.Y. 2015). NYSHRL liability is also imputed: 1) if the defendant has "an ownership interest" in the employer or has the authority to hire and fire employees, or 2) if the defendant aided and abetted the unlawful discriminatory acts of others.[1] *Gorman v. Covidien, LLC,* 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015). The individual aided and abetted the discriminatory activity where they "encouraged, condoned, or approved of" the discriminatory conduct of another employee. *Johnson*, 82 F.Supp. 3d at 536.

"[T]he NYCHRL 'specifies a broader standard for the imputation of employee conduct to an employer,' and liability 'can arise in three circumstances': 1) where the individual 'exercised managerial or supervisory responsibility'; 2) where the employer knew of the employee's conduct and either acquiesced or failed to take 'immediate and appropriate corrective action; and 3) where the employer should have known about the discriminatory conduct and did nothing to prevent it." *McLeod v. General Vision Servs*., 2018 WL 3745662 at *13 (E.D.N.Y. August 6, 2018) (quoting *Gorman*, 146 F. Supp. 3d at 529).

---

[1] Defendants' contention that because Plaintiff failed to plead separate claims for "aiding and abetting" against Vitucci Jr. precludes him from holding Vitucci Jr. liable for that cause of action is unrelated to whether he could be called an aider and abettor under the test elucidated under the NYSHRL for employer liability.

Vitucci Jr. was "personally involved" in the discrimination against Plaintiff, imputing Section 1981 liability. *See McLeod,* 2018 WL 3745662 at *13. As discussed *supra*, the record contains ample evidence that Vitucci Jr. personally contributed to the hostile work environment against Plaintiff throughout Plaintiff's employment. Plaintiff testified that he was verbally abused with racial slurs and violence throughout his employment by Vitucci Jr. (Pl. 56.1, ¶¶ 4.1, 50.2, 56.1, 109, 113, 121, 122, 137; Pl. Dec. ¶ 27-28); Vitucci Jr. repeatedly referred to Plaintiff as "black motherfucker" and "black" (Pl. 56.1, ¶¶ 122, 154); verbally abused other Black and Latino workers in Plaintiff's presence (Pl. 56.1, ¶ 131); held a gun to Plaintiff's head during work on two occasions (Pl. 56.1, ¶ 137); and, as also acknowledged by Vitucci Jr, he regularly carried a gun to work and wore it in a place where Plaintiff and other employees could see it. (Pl. 56.1, ¶¶ 138, 139). For the same reasons, Vitucci, Jr. "actually participated" in the discriminatory conduct, establishing liability under the NYSHRL. *Johnson v. County of Nassau*, 82 F.Supp.3d  533, 536 (E.D.N.Y.).

Vitucci, Jr. also has an "ownership interest" in Plaintiff's employer, DCV Holdings, which also allows for liability under the NYSHRL. N.Y. Exec. Law § 296(6); *Gorman v. Covidien, LLC,* 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015) (quoting *Tomka v. Seiler Corp*., 66 F.3d 1295, 1317 (2d Cir. 1995). As further discussed *infra*, Dom's Truck and DCV Holdings are the same entity in that they shared the same business address and the same office space (Pl. 56.1, ¶ 67.1); DCV Holdings owned all of the properties where Dom's Truck conducted business (Pl. 56.1, ¶ 67.2), and where Dom's Truck did not pay rent (Pl. 56.1, ¶¶ 67.4, 67.5).

Defendants' argument that Vitucci Jr. did not work at Dom's Truck rings hollow. Even though Defendants claim that Vitucci Jr. was allegedly only working for DCV Holdings, there is significant evidence of an intertwined ownership and management of the two companies. In

addition, Vitucci Jr. acknowledged that he repaired trucks for Dom's Truck, (Pl. 56.1, ¶ 62.1); drove trucks for Dom's Truck; (Pl. 56.1, ¶ 62.2), went to the bank for Dom's Truck. (Pl. 56.1, ¶ 62.2); allowed his personal car to be used by Dom's Truck' employees for work-related purposes, (Pl. 56.1, ¶ 62.3); and that he knew of information specific to Dom's Truck, including the types of trucks that the company repaired, (Pl. 56.1, ¶ 63.8), the details of Dom's Truck ventilation system, (Pl. 56.1, ¶ 63.7), and the specific work performed by each employee, including the safety equipment required for dangerous work. (Pl. 56.1, ¶ 63.5). Vitucci Sr. also acknowledged that Vitucci Jr. worked for Dom's Truck, testifying that Vitucci Jr. drove Defendants' trucks, and worked at the premises. (Pl. 56.1, ¶¶ 62.4, 62.5).

Given that DCV Holdings and Dom's Truck were so closely intertwined, Vitucci, Jr. exercised "managerial" and "supervisory liability" over Plaintiff, who worked for both entities. Plaintiff has satisfied Vitucci Jr.'s liability under the NYCHRL. *McLeod*, 2018 WL 3745662 at *13. Vitucci Jr.'s managerial role at Dom's Truck was further demonstrated when he testified to his knowledge of the wages, overtime, and paid vacations provided to Dom's Truck employees (Pl. 56.1, ¶ 63.2) and that he was the one who paid Plaintiff on many occasions. (Pl. 56.1, ¶ 63.3). Vitucci Jr. also frequently referred to Dom's Truck as "us" and "we" throughout his deposition testimony. (Pl. 56.1, ¶ 63.9). Moreover, in response to the question "who's 'we?'" in his deposition, Vitucci Sr. responded, "My whole family. My son, me, and my wife, whoever was working for the company." (Pl. 56.1, ¶ 63.10).

Vitucci Jr. regularly said to Plaintiff "I am your boss." (Pl. Dec. ¶ 50). He directed Plaintiff's work, and told him what to do (Pl. Dec. ¶ 50), he paid Plaintiff and other person's wages (Pl. Decl. ¶ 50), hired and fired employees (Pl. Dec. ¶ 50), screamed at employees and berated

them if they weren't doing their work (Pl. Dec. ¶ 50), and spoke with Vitucci Sr. about what work needed to be done. (Pl. Dec. ¶ 50).

Vitucci, Jr. frequently took Plaintiff away from him work at Defendant Dom's Truck to work on construction sites of the buildings owned by DCV Holdings, including operating the machines there, and putting up the structure for those buildings. (Pl. Dec. ¶ 52). His pay from Vitucci Jr. for DCV Holdings was the same as it was for Dom's Truck. (Pl. Dec. ¶ 58).

Vitucci, Jr. was present and observed Vitucci Sr. deny Plaintiff fair pay and vacation leave, and was present when Vitucci Sr used racial slurs against Plaintiff. (Pl. Dec. ¶ 51). He therefore "encouraged," "condoned" and "approved of" the discriminatory conduct of Vitucci Sr. *Johnson*, 82 F.Supp.3d at 536. For all of these reasons, a reasonable juror can find that Vitucci Jr. is liable for Plaintiff's claims in this matter under the NYCHRL.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be denied in its entirety, and Plaintiff respectfully requests that this Court join Defendant DCV Holdings to causes of action numbers three and four of the Amended Complaint, for discrimination and retaliation under Title VII.

Dated:  February 14, 2020
        New York, New York

                                        Respectfully submitted,

                                        Megan S. Goddard

                                        Goddard Law PLLC

                                        /s/_____
                                        Megan Goddard

31