UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

SAMUEL E. GERALD,

                 Plaintiff,              **MEMORANDUM & ORDER**
                                           17-CV-6525(EK)(RLM)

         -against-

DCV HOLDINGS, INC., et al.,

                 Defendants.

-----------------------------------x
ERIC KOMITEE, United States District Judge:

      Plaintiff Samuel Gerald brought this action in 2017, alleging federal and state claims for discrimination and retaliation against two entities — Dominick Vitucci Truck Sales and DCV Holdings, Inc. He also sued two individual defendants, Dominick Vitucci, Sr. and Dominick Vitucci, Jr., for certain of the same violations. Defendants move for summary judgment on all claims. For the reasons set forth below, the motion is granted in part and denied in part.

## I.    Background

### A.   Factual Background

      The following facts are set forth in the parties' testimony and declarations and are viewed in the light most favorable to the non-moving party — here, the Plaintiff.

      Gerald met defendant Vitucci, Sr. in the 1970s. At that time, Plaintiff was a child living near the truck yard

operated by Dominick Vitucci Truck Sales (which the Complaint defines as "Dom's Trucks") in Brooklyn, New York. Plaintiff also met Dominick Vitucci, Jr., around that time, when Vitucci, Jr. was a child as well. Plaintiff, who is now in his fifties, is black. The Vituccis are white.

Plaintiff testified at deposition that he began working at the truck yard at age nine. Joint Deposition Transcript Appendix ("JDTA"), Deposition Testimony of Samuel E. Gerald 59:13-20, ECF No. 60 ("Pl. Tr."); *see also* Declaration of Samuel E. Gerald ¶ 3, ECF No. 63 ("Pl. Decl."). According to his testimony, the Vituccis subjected him to a steady flow of egregious discrimination and abuse, including the regular use of shockingly racist language, throughout his approximately forty years with them. *See, e.g.*, Pl. Tr. 95:13-19; 227:5-228:25; 238:1-25; 239:23-240:22; 241:2-16; 314:25-315:20.

The evidentiary record in this case contains a relentless stream of the most offensive racial invective. Among other things, Plaintiff testified, Vitucci, Sr. routinely referred to him by various racial epithets, including "monkey," "n****r," "black b**tard," and "mutt." *Id.* at 57:21-58:9; 145:11-146:3; Pl. Decl. ¶ 27. Vitucci, Jr. employed similarly derogatory language. *See, e.g.*, *id.* at 167:14-17. On several occasions when Plaintiff protested this treatment, Defendants barred him from coming to work. *See, e.g.*, *id.* at 228:4-229:3

2

(when Plaintiff asked Vitucci, Sr. to stop calling him "n****r,"
Vitucci responded, "who the f**k are you for [me] to respect
you, you f**king mutt," and demanded that Plaintiff "take the
week off," telling him "don't let me see you here").  Plaintiff
also attested that he was undercompensated relative to white
employees with similar job duties.  Pl. Decl. ¶ 10.

Plaintiff claims he worked for both Dom's Trucks,
which serviced and sold trucks, and DCV Holdings, which was
apparently in the real-estate and construction businesses.  DCV
Holdings argues that it never employed Plaintiff.  Vitucci, Jr.
argues that he was associated only with DCV Holdings, not Dom's
Trucks, and that he, too, never had a contractual or supervisory
relationship with Plaintiff.

In 2015, Plaintiff stopped working for Defendants.
The parties dispute whether he resigned or was fired.  Plaintiff
testified that he was terminated for requesting time off and
opposing the Defendants' discriminatory practices.  *See, e.g.*,
Pl. Tr. 290:25-291:24.  He acknowledges that he had been
contemplating relocating to North Carolina.  *Id.* at 279:25-
280:12.  But he testified that he considered the move at least
in part because of the abuse to which the Vituccis subjected
him.  *Id.*  Among other things, Plaintiff testified that by the
time he left Defendants' employ, he was afraid "for his life"
around Vitucci, Jr., whom he described as "a dangerous

3

individual." *Id.* at 257:4-9. Plaintiff also acknowledged that he sought the move in part to raise his family's living standard. *Id.* at 279:25-285:1. But in any event, Plaintiff testified, Defendants terminated his employment *before* he and his family decided to move to North Carolina. *Id.* at 350:19-23.

Defendants contest Plaintiff's version of the events virtually in its entirety. The Vituccis asserted, in sworn declarations, that they treated Plaintiff "like family" and that Vitucci, Sr. filled a paternal role in Plaintiff's life because Plaintiff's own father was absent. Declaration of Dominick Vitucci, Sr. ¶ 4, ECF No. 56 ("Vitucci, Sr. Decl."). Both Vituccis declared that they "never made any of the racist or derogatory comments to Plaintiff that he alleges . . . at any time." *Id.* ¶ 12; Declaration of Dominick Vitucci, Jr. ¶ 8, ECF No. 57 ("Vitucci, Jr. Decl."). They dispute Plaintiff's testimony that he was punitively barred from attending work, and claim instead that Plaintiff would simply disappear — without explanation — for extended periods of time, following which Vitucci, Sr. would invariably welcome him back. Vitucci, Sr. Decl. ¶ 14; JDTA, Deposition Testimony of Dominick Vitucci, Sr. 156:19-25 ("Vitucci, Sr. Tr."). Plaintiff himself testified that Dom's Trucks rehired him after he was released from prison, first in 1987 and again in 1993. Pl. Tr. 100:6-22. Defendants also assert that Gerald "loved" his job, as evidenced by the

duration of his employment and Plaintiff's own testimony.  *See* Pl. Tr. 103:2-6 (Plaintiff testified that he "loved the job that [he] was doing").  Finally, they testified that Plaintiff was never terminated.  Instead, he decided — purely of his own volition — to resign in order to move his family to North Carolina.  *See* Vitucci, Sr. Tr. 128:11-12 ("He just took off. He didn't say good-bye.  He just disappeared.").

## B.  Procedural History

Plaintiff filed a Charge of Discrimination against Dom's Trucks with the Equal Employment Opportunity Commission in July 2015 (the "EEOC Charge").  *See* Declaration of Jeffrey A. Kimmel, ECF No. 55, Ex. 5 ("Kimmel Decl.").  On August 10, 2017, the agency sent Plaintiff a "Right to Sue" letter.  Kimmel Decl., Ex. 9.

Plaintiff commenced this action in November 2017.  In June 2018, Plaintiff filed an Amended Complaint (the "Complaint") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000; 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), Executive Law §§ 291-296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code. § 8-107.  *See* ECF No. 24.  Plaintiff requests, among other things, compensatory and punitive damages, as well as fees and costs.

In response, Defendants move for summary judgment. They argue: 1) the Complaint levels no Title VII claim against defendant DCV Holdings, and Plaintiff's request to add that claim now should be denied; 2) DCV Holdings was not, in any event, Plaintiff's "employer" under any applicable statute, because he never worked there; 3) Vitucci, Jr. should be dismissed because he never supervised Plaintiff; 4) Dom's Trucks never had the requisite number of employees to be covered by Title VII; 5) Plaintiff's claims are all time-barred; 6) Plaintiff has not established a prima facie claim of race discrimination or of a hostile work environment under any statute; and 7) Plaintiff has not established a prima facie claim of retaliation.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. . . . An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001).[1]

These general principles apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). The Second Circuit has periodically noted, however, that an "extra measure of caution" is merited in Title VII cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (reversing in part district court's dismissal on summary judgment). Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

---

[1] Unless otherwise noted, when quoting caselaw this Order omits all alterations, citations, footnotes, and internal quotation marks.

## III. Discussion

**A.    Plaintiff's Request to Join DCV Holdings in his Title VII Claims is Denied**

DCV Holdings asserts that it is not named as a defendant in Plaintiff's Title VII claims (Plaintiff's Third and Fourth Causes of Action), because Plaintiff brought them against "Defendant Dom's," *see* Complaint ¶¶ 182-201, and the Complaint defines Defendant Dom's to mean "Dominick Vitucci Truck Sales" only. *Id.* ¶ 6. The Complaint does name DCV Holdings in the 42 U.S.C. § 1981 claim, as well as the New York State- and City-law claims.

DCV Holdings contends that Plaintiff's failure to name it in his Title VII claim was intentional, noting that Plaintiff brought no allegations against DCV in his earlier EEOC claim, either. Defendants' Memorandum in Support at 4-5, ECF No. 64 ("Def. Br."). In his responsive brief, Plaintiff does not indicate whether the omission was intentional or inadvertent. *See generally* Plaintiff's Brief in Opposition, ECF No. 63 ("Pl. Br."). Instead, Plaintiff now requests the joinder of defendant DCV Holdings to his Title VII claims, pursuant to Rule 21 of the Federal Rules of Civil Procedure. *See* Pl. Br. at 3.

### 1.    <u>Failure to Exhaust Administrative Remedies</u>

Plaintiff's request to amend and join DCV in Counts Three and Four is denied as futile. *Ricciuti v. N.Y.C. Transit*

*Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (leave to amend will be denied as futile if the proposed new claim could not withstand a motion to dismiss). The futility arises because Plaintiff failed to exhaust his administrative remedies under Title VII against DCV Holdings. Plaintiff's EEOC Charge and associated documents name only "Dominick Vitucci Truck Sales" as a respondent. DCV Holdings is nowhere mentioned. *See* Kimmel Decl., Exs. 5, 6, 7.

"Before bringing a Title VII claim in the district court, an aggrieved employee is required to exhaust his administrative remedies." *Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006). A "plaintiff's Title VII claims against a defendant who is not named as a respondent in an EEOC charge or the right-to-sue letter in connection with the complaint will be dismissed." *Manos v. Geissler*, 377 F. Supp. 2d 422, 426 (S.D.N.Y. 2005). Plaintiff failed to exhaust his administrative remedies against DCV Holdings before the EEOC.

Nevertheless, Plaintiff asks that I apply the "identity of interest exception" to his failure to exhaust. *See* Pl. Br. at 4-5. The identity of interest exception applies when, generally speaking, a Plaintiff would have had difficulty ascertaining the existence of the unnamed party before the EEOC; the interests of the named and unnamed parties before the EEOC are overlapping and entangled, such that EEOC remedies against

the named party would beget compliance by the unnamed party; and when an unnamed party's absence from the EEOC proceedings does not prejudice its interests. *See generally Johnson v. Palma*, 931 F.2d 203, 209-10 (2d Cir. 1991) (laying out the "*Johnson* factors"). Courts following *Johnson* have also invoked the identity of interest exception when the unnamed "defendant is named in the body of the [EEOC] charges as having played a role in the discrimination." *E.g.*, *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 311 (S.D.N.Y. 2014).

Some courts hold that where a plaintiff was represented by counsel at the time of the EEOC charge, the failure to include a party categorically prohibits him from lodging a Title VII claim against the omitted party. *See, e.g.*, *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2011) (the "identity of interest exception . . . is limited to situations where a plaintiff was not represented by counsel at the time the EEOC Charge was filed."). Here, Plaintiff was represented when he filed his EEOC charge. The limitation to *pro-se* cases, however, rests on dictum from *Johnson*, 931 F.2d at 209 (observing that EEOC "charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements"), and other district courts have declined to adopt a blanket limitation. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No.

18-CV-8188, 2020 WL 7388654, at *3 (S.D.N.Y. Dec. 16, 2020);
*Williams v. Quebecor World Infiniti Graphics, Inc*., No. 03-CV-
2200, 2007 WL 926901, at *3 (D. Conn. Mar. 23, 2007).  I agree
with the view that Plaintiff's legal representation at the time
of EEOC filing is "informative" when considering certain *Johnson*
factors, but not dispositive.  *Senecal v. B.G. Lenders Serv.
LLC*, 976 F. Supp. 2d 199, 216 (N.D.N.Y. 2013).

Nevertheless, the identity-of-interest exception is of
"limited" application, *e.g.*, *Valenzuela v. Riverbay Corp.*, No.
6-CV-903, 2007 WL 414487, at *2 (S.D.N.Y. Jan. 31, 2007), and it
does not apply here, given the *Johnson* factors.  Plaintiff does
not contend that DCV Holdings misled him about which corporate
entity was his employer or that it otherwise concealed relevant
facts.  And Plaintiff was obviously aware of the identity of DCV
Holdings prior to filing the EEOC Charge, because *he named* DCV
Holdings as a defendant in a wage-and-hour lawsuit he filed in
June 2015 — mere days before he filed the EEOC Charge on July 1,
2015.  *See* Kimmel Decl., Ex. 3.  Plaintiff has not established
that Dom's Trucks and DCV Holdings are "entangled."  They may
share office space, *see* JDTA, Deposition Testimony of Dominick
Vitucci, Jr. 17:2-18:3 ("Vitucci, Jr. Tr."), but they have not
commingled assets.  Vitucci, Sr. Decl. ¶ 18; Vitucci, Jr. Decl.
¶ 5; Vitucci, Jr. Tr. 16:13-25; *see Senecal*, 976 F. Supp. 2d at
223 (finding commingling of funds relevant to identity of

interest analysis).  They also appear to be in separate
industries: Dom's Trucking services and sells trucks, while DCV
Holdings is in the real-estate business.  Vitucci, Jr. Decl.,
¶¶ 4-5.

The prejudice to DCV Holdings from joinder may be
limited, considering that it is already in federal court
defending other federal and state claims arising out of the same
factual history.  But all other *Johnson* factors favor DCV
Holdings.  And Plaintiff was represented by counsel, as noted
above, when he filed the EEOC charge.  *See Manzi v. DiCarlo*, 62
F. Supp. 2d 780, 787-88 (E.D.N.Y. 1999) (representation by
counsel militates against application of the exception).  That
charge not only fails to name DCV Holdings, but also fails to
allege any facts about it whatsoever.  The request to amend is
denied.

## B.    Covered Entities Under the Relevant Statutes

Both the entity defendants and Vitucci, Jr. argue that
they are not covered by certain of the statutes pursuant to
which Plaintiff has sued them, either because they lacked the
requisite employment relationship with him, or because they did
not have the requisite number of total employees to be covered
by the laws in question.

42 U.S.C. § 1981 protects citizens' rights to "make
and enforce contracts" without respect to race.  The statute

"outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a *contractual relationship*, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (emphasis added). Whereas Section 1981 requires an actual (or contemplated) contractual relationship, the New York State and New York City Human Rights Laws impose liability only on "employers." DCV Holdings claims it never had a contractual or employment relationship with Plaintiff. Vitucci, Jr. (who is named as a defendant in the NYSHRL and NYCHRL claims) argues, in turn, that he only worked for DCV Holdings, not Dom's Trucks; therefore, he argues, he never had an employment relationship with Plaintiff, either.

In addition, the reach of Title VII defines "employer" to include only entities with fifteen or more employees. 42 U.S.C. § 2000e(b). Dom's Trucks argues that the Title VII claims against it should be dismissed because it never reached the fifteen-employee threshold during the events in question.

I take up these issues in turn below.

1. There is a Dispute of Material Fact as to Whether Plaintiff Worked for DCV Holdings or Vitucci, Jr.

Though Plaintiff did not name DCV Holdings as a defendant to his Title VII claims, he did name DCV in his claims under Section 1981 and the NYSHRL and NYCHRL. DCV Holdings and Vitucci, Jr. argue that these statutes do not reach them because

13

neither DCV nor Vitucci, Jr. ever had a contractual or employer-
employee relationship with Gerald.

> a.   Section 1981

"In drafting § 1981, Congress did not seek to
promulgate some specialized federal definition of contract law,
but merely intended the term contract to have its ordinary
meaning." *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258,
261 (2d Cir. 2000).  Thus, a contractual agreement exists for
Section 1981 purposes when a party promises to perform work in
exchange for compensation.  *Id.*

Here, Plaintiff has adduced sufficient evidence that
he had a "contractual" relationship with DCV Holdings and
Vitucci, Jr.  He is assisted in that effort by Vitucci, Jr.'s
own testimony that he (Vitucci, Jr.) never worked for Dom's
Trucks — only for DCV.  Vitucci, Jr. Tr. 8:21-23 (Question: "Did
you ever work for Dominick Vitucci Truck Sales?" Answer: "No.");
*see also id* at 78:17-18 (Vitucci, Jr. "think[s] he was "vice-
president" of DCV Holdings).  Thus, by Vitucci, Jr.'s own
formulation, any work that he requested of Plaintiff would have
been on behalf of DCV Holdings.

To be sure, Vitucci, Jr. denies that Plaintiff did any
work for him at any entity.  But Plaintiff produced evidence to
the contrary.  He testified that Vitucci, Jr. routinely directed
his work activity, and at times said things like "I am your

boss" to Gerald.  Pl. Decl. ¶ 50.  Plaintiff declared that

"Vitucci Jr. would frequently take [him] away from the Dom's

Truck premises to perform work on the construction sites of the

buildings owned by DCV Holdings."  Pl. Decl. ¶ 52.  Plaintiff

stated that he did the following tasks, all of which were

"performed for DCV Holdings": he served as "the main machine

operator, and was required to operate cranes, front-end loaders,

back holes [sic], forklifts, and excavators" in the course of

demolition and other construction work.  *Id.*  Plaintiff also

declared that "Vitucci Jr. asked [him] to go to Anguilla to work

on the construction site of a resort owned by DCV Holdings."

*Id.* ¶ 55.  Although Plaintiff did not make this trip in the end,

he was still "tasked with driving the trailer filled with

building materials to the pier which was then shipped to

Anguilla for work on the DCV Holdings property there."  *Id.*

Gerald further declared that nothing in the terms and conditions

of his employment changed between his work for Dom's Trucks and

DCV Holdings, and that he "was paid [in either case] by either

Carol Vitucci or Vitucci Jr. in the office shared by Dom's

Trucks and DCV Holdings."  *Id.* ¶ 58.

     Thus, the motion for summary judgment by DCV Holdings

and Vitucci, Jr. on this point is denied.

b.   NYSHRL and NYCHRL

The NYSHRL and NYCHRL claims both require the
application of a functional test for "employer" status.  That
test asks whether the alleged employer: (i) selected and engaged
the claimant; (ii) paid the claimant's salary or wages; (iii)
had the power to dismiss the claimant; and (iv) could exercise
control over the claimant's conduct.  *E.g.*, *Goyette v. DCA
Advertising Inc.,* 830 F. Supp. 737, 746 (S.D.N.Y. 1993); *Urena
v. Swiss Post Sols., Inc.*, 2016 WL 5173389, at *3 (S.D.N.Y.
Sept. 21, 2016) (applying the same test to determine employer
relationship for NYSHRL and NYCHRL).  The lion's share of
emphasis is on the fourth factor*.  See Hargett v. Metro. Transit
Auth.*, 552 F. Supp. 2d 393, 405 (S.D.N.Y. 2008).

Given the evidence described above, there are material
facts in dispute sufficient to preclude summary judgment on the
issue of whether DCV Holdings was Plaintiff's "employer" for
purposes of the New York State and City laws.

2.   There is a Dispute of Material Fact as to
     Whether Dom's Trucks Constitutes an Employer under
     Title VII

Dom's Trucks argues that it is not subject to Title
VII because that statute defines "employer" to include only
entities having "fifteen or more employees for each working day
in each of twenty or more calendar weeks in the current or
preceding calendar year."  42 U.S.C. § 2000e(b).  Dom's Trucks

16

claims to have had fewer than fifteen employees at all relevant times. *See* Def. Br. at 8-9. For purposes of this count, "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when." *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211 (1997). An employee is counted under Section 2000e(b) if the employer maintains an employment relationship with him on any given day in a calendar year, regardless of whether the individual works or is compensated on that day. *Id.* at 207-208, 211-212 ("[T]he ultimate touchstone" is the existence of an "employment relationship.").

Dom's Trucks maintains that its quarterly tax returns show that it employed only five or six employees in 2013, 2014 and 2015. *See* Def. Br. at 8-9; Vitucci, Sr. Decl., ¶ 8, Ex. 1. But these tax returns are of limited utility, since Vitucci, Jr. admitted that some employees were likely paid "in cash," Vitucci, Jr. 114:23-115:14, and employees working for both entities were allegedly paid one salary.

For his part, Plaintiff submitted a declaration that Dom's Trucks employed at least sixteen people at all times during his employment, excluding Carol Vitucci, Vitucci, Sr. and an accountant named "Anthony." Declaration of Megan S. Goddard, ECF No. 63 ("Goddard Decl."), Ex. 5 (Plaintiff's affidavit for

the EEOC Charge); Pl. Decl. ¶ 59.[2]  Thus, there is a genuine

dispute of fact regarding whether Dom's Trucks met Title VII's

"employer" threshold during some or all of the alleged conduct,

even if Plaintiff's evidence on this point is relatively thin.

## C.  Defendants' Statute of Limitations Motion is Granted in Part

Given Plaintiff's forty-year tenure with the

Defendants, much — even most — of the discriminatory conduct he

alleges predates the limitations periods for the applicable

statutes.  Title VII, for example, generally requires claimants

to file a charge with the EEOC within 300 days "after the

alleged unlawful employment practice occurred."  42 U.S.C.

§ 2000e-5(e)(1); *see also Ohuche v. New York City Bd. of Educ.*,

161 F. App'x 68, 69 (2d Cir. 2005) (EEOC time limit operates as

a statute of limitations).  For Section 1981, the statute of

limitations is four years in this case.  *See Jones v. R.R.*

*Donnelley & Sons Co.,* 541 U.S. 369 (2004).  For the NYSHRL and

NYCHRL, it is three years.  N.Y. C.P.L.R. 214(2); N.Y.C. Admin.

Code § 8-502(d); *see also Taylor v. City of New York*, 207 F.

---

[2] The EEOC affidavit is cognizable on summary judgment because it was sworn to, and Plaintiff is competent to testify to its contents.  *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir. 2001).

Supp. 3d 293, 302 (S.D.N.Y. 2016) ("The NYSHRL and NYCHRL statutes of limitations are three years.").

Plaintiff filed his EEOC charge on July 1, 2015, meaning that conduct occurring prior to September 4, 2014 would be outside Title VII's statute of limitations. 42 U.S.C. § 2000e-5(e)(1). As set forth above, however, Plaintiff complains of conduct dating back to the 1970s. *See, e.g.*, Pl. Tr. 134:24-135:7 (Plaintiff testified that when he was a child, Vitucci, Sr. called him a "little monkey").

Plaintiffs may still bring claims for conduct predating the applicable limitations periods, however, if such conduct falls within the "continuing violation" exception. *See, e.g.*, *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (recognizing the continuing violation exception to Title VII claims); *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 412-13 (N.D.N.Y. 2005) (continuing violation doctrine is applicable to Section 1981 claims); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (same for NYSHRL and NYCHRL claims).

The exception "makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a continuous policy and practice of discrimination and at least one act in that policy and practice took place within the limitations period." *Jackson v. N.Y.*

19

*Office of Mental Health*, No. 11-CV-7832, 2012 WL 5862741, at *2
(S.D.N.Y. Nov. 15, 2012).  The doctrine extends the limitations
period in hostile work environment cases, because "[h]ostile
work environment claims are different in kind from discrete
acts.  Their very nature involves repeated conduct.  The
unlawful employment practice therefore cannot be said to occur
on any particular day.  It occurs over a series of days or
perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.
101, 103 (2002) (cleaned up).  That is, such claims are "based
on the cumulative effect of individual acts." *Id.*  Still, to
bring a hostile work environment claim "within the continuing
violation exception, a plaintiff must at the very least allege
that one act of discrimination in furtherance of the ongoing
policy occurred within the limitations period." *Patterson*, 375
F.3d at 220.  And, to establish a hostile work environment,
Plaintiff must show that the harassment he endured was
"sufficiently severe or pervasive to alter the conditions of
[his] employment . . . ." *Perry v. Ethan Allen, Inc.*, 115 F.3d
143, 149 (2d Cir. 1997).

Because Plaintiff has made a sufficient showing of a
hostile work environment, the continuing violation doctrine
applies here.  Plaintiff identified substantial evidence of a
hostile work environment transpiring *within* the limitations
period.  For example, he testified that in December 2014, he

asked Vitucci, Sr. to stop calling him "black b\*\*tard"; Vitucci, Sr. allegedly responded by calling him "black mother\*\*ker."  Pl. Decl. ¶ 24.  In January 2015, after Plaintiff complained to Defendants about his heavy workload, Vitucci, Sr. again responded with racial invective.  *Id.* ¶ 40.  Shortly thereafter, in response to Plaintiff's further complaints, Vitucci, Sr. told him "you ain't going nowhere n\*\*\*\*r, I own you."  *Id.* ¶ 42.  At some later point, Vitucci, Sr. told Plaintiff "I will have my son put a bullet in your head, n\*\*\*\*r,"  Pl. Tr. 260:12-261:9, something that Vitucci, Jr. had threatened to do himself previously.  *See id.* at 176:13-19; 202:17-20.

These incidents all occurred within the relevant statutes of limitations, and Plaintiff has made a sufficient showing that they constitute part of a "continuing violation" with conduct predating the limitations periods.  Through his testimony and declaration, Plaintiff produced evidence of routine and continuous harassment from his hiring in the 1970s to his separation in 2015.  Though he does not recall specific dates (or even years) for each instance, Plaintiff testified that the harassment occurred "all the time."  *Id.* at 227:5-228:3.  And this is not, to say the least, a case involving

allegations of an isolated comment here or there.  The proffered evidence is legion.[3]

Plaintiff also declared, more generally, that he would go home and cry "every day" about his poor treatment at work. Pl. Decl. ¶ 35.  Plaintiff testified that the racial abuse he endured was "a thing where you go through it all the time." *Id.* at 227:16-17.  Plaintiff went on, "It was like that.  I can't give you a specific time and date and month . . . . This is going from what I can remember from the period of time life [sic] working there . . . ." *Id.* at 227:20-24.  Plaintiff testified that the Defendants' use of racial slurs and abusive treatment was an issue the entire time he worked for Defendants. *See id.* at 95:8-97:23; 107:10-17; 154:24-156:2; 179:11-180:5; 210:10-211:10; 227:5-228:3; 290:25-291:12; 296:14-23.

Moreover, Plaintiff's wife testified that from the 1980s until Plaintiff's termination, Vitucci, Sr. would scream "black mother**ker" at Plaintiff "practically every time" she

---

[3] Plaintiff testified, among other things, that: Vitucci, Sr. referred to Plaintiff as a "black criminal" on several occasions, *id. at* 238:11-25, and often called him a "mutt," *id.* at 95:13-23; 97:18-23; 227:5-9; 228:19-229:3, a n****r, *id.* at 97:20-23, and remarked to Plaintiff "black guys want to have Cadillacs but you can't buy the gas." *Id.* at 244:3-8.  Vitucci, Jr. called Plaintiff, among other things, "black," "Zekie black," "black mother**ker," and "black b**tard." *Id.* at 201:25-203:9; 96:17-18; 213:7-16. Plaintiff also testified that Defendants made the following comments, although he does not specify which comments came from which defendant: "why do black girls have children and can't afford to feed them," "why do they have ten kids and welfare," "why [do] black people got big lips," "is it true that black people's penis is big." *Id.* at 188:14-189:6.

would pick him up from work.  JDAT, Deposition Testimony of
Patricia Gerald 114:6-115:11 ("P. Gerald Tr.").  And she related
that Plaintiff would come home "hurt" because of Defendants' use
of "racial slurs" and "profanity."  *Id.* at 44:25-47:13.

Given the steady volume of outrageous events alleged,
Plaintiff has more than satisfied his burden (at this stage) of
demonstrating "specific, related instances of harassment
adequate to depict a continuity of allegedly unlawful conduct."
*Fitzgerald*, 251 F.3d at 362-63.

These instances were similar in kind to what
transpired in December 2014 and January 2015.  They involved the
same two individuals subjecting Plaintiff to the same kind of
verbal abuse that Plaintiff testified occurred throughout his
tenure in the Defendants' employ.  *See Cornwell v. Robinson*, 23
F.3d 694, 704 (2d Cir. 1994) (continuing violation occurred
where plaintiff "suffered the same kinds of harassment at the
hands of some of the same" individuals).  Thus, the continuing
violation doctrine permits Plaintiff to premise his claim on
such acts.

Defendants note — and Plaintiff concedes — that he did
not check the box for "continuing violation" on the EEOC charge.
*See* Def. Br. at 12.  Generally speaking, a plaintiff "may not
rely on a continuing violation theory" unless he "has asserted
that theory in the administrative proceedings."  *Fitzgerald*, 251

F.3d at 360; *see also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985) ("[A] continuing violation [must be] clearly asserted both in the EEOC filing and in the complaint."); *Weiner v. City Coll. of City Univ. of N.Y.*, No. 95-CV-10892, 1997 WL 381799, at *3 (S.D.N.Y. July 9, 1997) (noting that whether the plaintiff checked the box indicating a "continuing violation" is relevant to whether he "clearly assert[ed]" such a violation in the EEOC charge). The central question is not whether Plaintiff checked the given box, but whether the charge filed with the EEOC gave the agency "adequate notice" to investigate a continuing violation. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam); *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003).

The allegations in Plaintiff's EEOC filing easily meet this standard, as they were sufficient to put the EEOC on notice that Plaintiff was complaining not just of discrete actions, but also of a hostile work environment. The dates Plaintiff specified in his EEOC Charge are from "Earliest: 1976" to "Latest: 2/10/2015." Kimmel Decl., Ex. 5. He described the offending conduct as continuous. *See* Kimmel Decl., Ex. 6 ¶ 6 (Dominic Vitucci, Sr. "routinely singled [Plaintiff] out and made [his] job more difficult because [he is] African American and had asserted [his] rights in the workplace"); *id.* ¶¶ 19-20 (both Vituccis would "constantly" use racial epithets to refer

24

to Plaintiff on a "daily basis" and "it was so frequent and severe that it created a hostile and offensive work environment"). And the EEOC, in its determination letter, noted that Plaintiff alleged that Dom's Trucks subjected him to a "hostile work environment." Kimmel Decl., Ex. 8 at 1-2. Thus, the continuing violation doctrine applies, despite the failure to check the relevant box in the EEOC charge.

The continuity of the alleged harassment was interrupted, however, when Plaintiff was significantly younger. In 1991, when he was approximately twenty-four years old, Plaintiff began a prison sentence that continued until 1993. *See* Pl. Tr. 35:4-38:7. This period, totaling more than two years, is long enough to interrupt the required continuity for the purposes of the continuing violation doctrine. *See Annis v. Cty. of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (discrimination allegedly suffered before and after a six-year gap "cannot be joined as a continuing violation"); *Selan v. Kiley*, 969 F.2d 560, 565-67 (7th Cir. 1992) (two-year gap between discriminatory events "negates the contention that the acts were continuous or connected"). The Court expresses no position, at this stage, on whether evidence of the conduct predating this prison term may be admissible at trial in this case as "background evidence," or for other reasons. *See, e.g.*, *Morgan*, 536 U.S. at 102 (holding that Title VII does not bar

plaintiffs from using untimely acts as background evidence to support a timely claim).

In sum, because Plaintiff adequately alleged a continuing violation before the EEOC — and proffers sufficient evidence of one here — he may proceed in the instant action to allege conduct occurring after 1993 but otherwise predating the otherwise-applicable limitations periods.

## D.   **Plaintiff Has Established a Prima Facie Case of Race Discrimination**

Plaintiff claims that each of the defendants discriminated against him based on his race in violation of Section 1981, the NYSHRL, and the NYCHRL; and that defendant Dom's Trucks did so in violation of Title VII.  To establish a prima facie case of discrimination, a plaintiff must show: (1) he belongs to a protected class; (2) he was competent to perform the job or was satisfactorily performing the duties required by his position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination based on his race. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

Defendants do not dispute that Plaintiff satisfies the first two elements.  Rather, they contend that Plaintiff has not shown that he suffered an "adverse employment action" or that

any such action occurred under circumstances giving rise to an inference of discrimination.

1. <u>Adverse Employment Action</u>

Plaintiff's claims all require him to establish that he was subject to an adverse employment action. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (same analysis for Title VII and Section 1981); *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (adverse action required for NYSHRL and NYCHRL).

An "adverse employment action" is a "materially adverse change in the terms and conditions of employment." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 204 (2d Cir. 2006). Chief among the litany of adverse employment actions is, of course, termination. *See, e.g.*, *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).

Given the list of offensive actions detailed above, the Defendants would have a difficult time arguing that Plaintiff's termination was not motivated by race. Thus they dispute, primarily, that Plaintiff was terminated at all; instead, they contend that he resigned voluntarily. And the record is somewhat muddled on this point. As described above, Defendants contend that Plaintiff resigned because he wanted to relocate his family to North Carolina to obtain a better standard of living. *See supra* Part I.A. Plaintiff himself

27

acknowledges that this was a partial motivation, though he also says the move was motivated by the Defendants' harassment and his fear of Vitucci, Jr.

Plaintiff describes the events leading to his separation as follows: in early January 2015, Plaintiff complained about his heavy workload and long hours, specifically noting that his hours exceeded those of all other employees apart from Eddie (who is also black). Pl. Decl. ¶ 40. In response, Vitucci, Sr. called Plaintiff a black motherf\*\*ker and told him that if he had a problem he should not come back to work. *Id.*

Later that month, Plaintiff complained to Carol Vitucci about Vitucci, Sr.'s use of racial slurs. *Id.* ¶ 39. A few days later, Plaintiff approached Vitucci, Sr., again, asking that Plaintiff be paid "the same wage as everyone else in the yard," including higher-paid white employees. *Id.* ¶ 41. Plaintiff "complained" about working long hours and weekends while other employees (including white employees) were paid at higher rates. *Id.* Plaintiff also "requested paid time off" and observed that "other employees, including white employees, were allowed to take paid leave for vacations and personal reasons" while Plaintiff was not. *Id.*

The next month, Plaintiff approached Vitucci, Sr., yet again. He asked if Vitucci, Sr. had thought about the requests

for higher pay, shorter hours, and paid leave time.  Vitucci, Sr. responded that Plaintiff should go see Carol Vitucci in the office.  *Id.* ¶ 46.  Carol, in turn, told Plaintiff that things were slow and then "terminated" him.  *Id.*  Plaintiff later went back to the yard to speak with Vitucci, Sr. who told him "I'll have my son put a bullet in your head, n****r."  Pl. Tr. 260:12-262:11.  Plaintiff testified that he was terminated because he opposed the Defendants' discriminatory employment practices: "I think Dom told [Carol] to let me go . . . . I think he terminated me, got rid of me because I wanted [a] higher raise and I didn't want to accept how he was treating me.  That's why."  Pl. Tr. 313:12-23; 321:9-12.

Plaintiff's testimony is complicated, to a degree, by his acknowledgment that Vitucci, Sr. resisted his separation shortly before discharge (though in racially offensive terms, once again).  *See* Pl. Tr. 299:8-301:2 (Plaintiff states in a discussion of his potential relocation to North Carolina, Vitucci, Sr. told him "you ain't going nowhere n****r, I own you").

Considering this evidence in the light most favorable to Plaintiff, however, there is clearly a dispute of fact as to whether Plaintiff was terminated or resigned.

2.  <u>Inference of Discrimination</u>

The standard used to establish an inference of discrimination is not "unbending or rigid." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). It "can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 271 (E.D.N.Y. 2013). An inference can arise from, for example, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009). Plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008).

Defendants maintain that even if Plaintiff was fired, that action was not borne out of racial animus. This argument is easily dismissed at the summary judgment stage, based on the evidence set out above (at length). Defendants invoke the "same actor" inference, which posits that when the same actor hires a person in a protected class, and then later fires that same person, "it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d

Cir. 1997).  But the same-actor inference is not a bar in every case, of course, and is "less compelling when a significant period of time elapses between the hiring and firing." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 138 (2d Cir. 2000). Consequently, and given the substantial evidence of racial animus that Plaintiff has proffered, that inference cannot support summary judgment in this case.

### 3.  Individual Liability

Vitucci, Sr. and Jr. also seek summary judgment on the Plaintiff's Section 1981, NYSHRL, and NYCHRL claims against them.  Vitucci, Sr.'s motion is predicated entirely on the argument — already rejected above — that the evidence does not establish his discriminatory intent.

Vitucci, Jr. makes the additional argument that Plaintiff has come forward with insufficient evidence that Vitucci, Jr. ever "personally engaged in any discriminatory or retaliatory conduct as it concerns [Plaintiff's] purported termination."  Def. Br. at 30.  As set out above, Plaintiff has proffered more than sufficient evidence that Vitucci, Jr. was involved in the creation of a hostile work environment. Nevertheless, Plaintiff does not adduce any facts showing that Vitucci, Jr. was personally involved in his purported termination.  Therefore, to the extent that Plaintiff alleges

that Vitucci, Jr. is individually liable for his discriminatory *discharge*, summary judgment is proper.

## E. Plaintiff Has Established a Prima Facie Case of Retaliatory Termination, but Not of a Retaliatory Hostile Work Environment

Defendants move for summary judgment on Plaintiff's retaliation claims. To establish a prima facie case of retaliation under Title VII, Section 1981, and the NYSHRL, an employee must show that: (1) he engaged in "protected participation or opposition . . . (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Under the NYCHRL, a plaintiff must show that he took an action opposing his employer's discrimination, *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011); that retaliatory action occurred after this protected action, *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001); and that the employer's action was "reasonably likely" to deter the plaintiff from engaging in protected activity in the future. *E.g.*, *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 71 (1st Dep't 2009).

Defendants argue that Plaintiff engaged in no protected activity and, even if he did, he has not shown a causal connection between the protected activity and any adverse

32

employment action.  For the reasons discussed below, there are disputed issues of fact that preclude summary judgment on Plaintiff's retaliatory termination claim.  Plaintiff's retaliatory hostile work environment claim, however, is dismissed.

### 1.   Did Plaintiff Engage in Protected Activity?

An employee engages in protected activity when he complains about conduct he reasonably believes constitutes illegal discrimination.  *E.g.*, *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (protected activity is action that "protest[s] or oppose[s] statutorily prohibited discrimination"); *Thomas v. iStar Financial, Inc.*, 438 F. Supp. 2d 348, 364 (S.D.N.Y. 2006) (holding that "informal complaints to supervisors" can constitute protected activity).

Plaintiff testified that he repeatedly protested to both Vitucci, Sr. and Jr. that he was paid less than his white co-workers, and that he was denied vacation leave in contrast to those co-workers.  Pl. Tr. 313:12-23, 320:17-321:15.  Plaintiff also adduced evidence that he engaged in protected activity by protesting Defendants' use of derogatory language, among other things.  *See, e.g.,* Pl. Decl. ¶ 24 (Plaintiff complained to Vitucci, Sr. in December 2014, telling him: "stop calling me a black b**tard").

2.   <u>Did Plaintiff Suffer an Adverse Action?</u>

As described above, Plaintiff has adduced sufficient evidence that he suffered adverse actions in the form of termination and a hostile work environment. *See Salerno v. City Univ. of New York*, No. 99-CV-11151, 2003 WL 22170609, at *11 (S.D.N.Y. Sept. 18, 2003) ("An adverse employment action can take the form of a hostile work environment."); *Nash v. New York State Exec. Dep't, Div. of Parole*, No. 96-CV-8354, 1999 WL 959366, at *10 (S.D.N.Y. Oct. 20, 1999) (because court found plaintiff had presented evidence sufficient to sustain hostile work environment claim, plaintiff had also presented sufficient evidence of the adverse employment action required to make out a retaliation claim).

3.   Does Plaintiff Point to a Causal Connection between the Protected Activity and the Adverse Employment <u>Action?</u>

To establish a causal connection, a plaintiff must "be able to provide either direct evidence of retaliatory animus or make an indirect showing that a protected activity was followed closely by retaliatory treatment." *Lewis v. Snow*, No. 1-CV-7785, 2003 WL 22077457, at *8 (S.D.N.Y. Sept.8, 2003). Courts recognize that most retaliation "is not carried out so openly as to provide direct proof of it." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

a.   Retaliatory Discharge

A plaintiff alleging retaliatory discharge must establish that retaliation was a "but-for cause of the adverse action, and not simply a substantial or motivating factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013).  Despite that relatively high standard, "[e]ven without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Id.*

Plaintiff has adduced sufficient proof for a reasonable jury to conclude that Plaintiff's termination was carried out in retaliation for his complaints of discriminatory treatment.  As noted above in Part III.D.1, Plaintiff has adduced facts that he was terminated immediately following certain protected activity.  Not only did Plaintiff's complaints closely precede his alleged termination, Defendants' language specifically indicates that Plaintiff would be punished for raising issues with the way he was being treated.  Plaintiff has therefore presented sufficient circumstantial evidence of but-for causation to survive at the summary judgment phase.

b.   Retaliatory Hostile Work Environment

Plaintiff also claims that he was retaliated against in the form of a hostile work environment.  *See* Compl. ¶¶ 189-

201; Pl. Br. at 23-27.  To establish a causal connection between the protected activity and the hostile work environment, "some increase in the discrimination or harassment — either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment — must occur for the employee to make out a viable retaliation claim." *Hall v. N.Y. City DOT*, 701 F. Supp. 2d 318, 339 (E.D.N.Y. 2010).  "If, however, the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior." *Id*.  Plaintiff has not set forth sufficient evidence that the hostile work environment *increased* in severity as a result of his complaints. While Plaintiff has adduced evidence that Defendants took additional actions that further contributed to a hostile work environment following his complaints, he has failed to demonstrate any exacerbation of the already intense workplace hostility he alleges, following his complaints.  Plaintiff's retaliatory hostile work environment claim under the NYCHRL fails for the same reason — namely, his failure to establish that the protected activity meaningfully altered the severity of the alleged retaliatory conduct.  "An employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's

protected activity and the employer's challenged conduct."
*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 129 (2012).

Because Plaintiff has not pointed to evidence that the actions Defendants took against him were anything but a "continuation" of an already hostile course of conduct, I grant summary judgment on Plaintiff's retaliatory hostile work environment claim.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's request to amend to add defendant DCV Holdings to its Title VII claims is denied.  Defendants' motion for summary judgment is denied as to all of Plaintiffs' claims except for the retaliatory hostile work environment claim and any claim alleging that Dominick Vitucci, Jr. is individually liable for Plaintiff's purported discriminatory or retaliatory discharge.



SO ORDERED.



/s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    July 6, 2021
          Brooklyn, New York